# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3230
_____

David McConnell

*Plaintiff - Appellant*

v.

Anixter, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: November 14, 2019
Filed: December 13, 2019
_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.
_____

GRUENDER, Circuit Judge.

David McConnell appeals the district court's[1] grant of summary judgment in favor of Anixter, Inc. on his claims that Anixter violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*,

_____

[1]The Honorable John M. Gerrard, Chief Judge, United States District Court for the District of Nebraska.

by discriminating and retaliating against him on the basis of his prior service in the military and exercise of rights protected under the statute. We affirm.

## I.

McConnell served on active duty in the United States Army from 1999 to 2008. During this time, he suffered two long-term disabilities: (1) a back injury restricting him from lifting more than forty pounds, and (2) post-traumatic stress disorder ("PTSD"). He retired from the Army in 2008.

In November 2012, Anixter hired McConnell to be the service center manager in its Grand Island, Nebraska facility. During the interview process, McConnell's hiring supervisor told him that Anixter viewed his military experience positively because it meant he had some of the skills needed for the position. Also at this time, McConnell informed Anixter of his service-related disabilities, and Anixter assured him that accommodating these disabilities would not be a problem.

As service center manager, McConnell directly supervised a number of Anixter employees. In May 2013, McConnell had an altercation with one of his subordinates, ultimately telling her "to get the fuck out of my facility." Subsequently, McConnell's supervisor orally warned him not to use such language. Then in August 2013, McConnell had another altercation with a different subordinate, during which McConnell admitted to raising his voice at her. After this incident, McConnell's supervisor issued him a written warning, notifying him that if he did not "clean up [his] language" and "control [his] temper" moving forward, "further disciplinary action may be necessary up to and including termination."

During a phone conversation in December 2014, McConnell and his supervisor disagreed about changes the supervisor wanted made to McConnell's supervisees' work schedules. The parties dispute both the tenor and substance of the conversation, but it is undisputed that by the end of the call McConnell was

"frustrated" enough that he requested a break to manage his PTSD. His supervisor instead sent him home. Four days later, Anixter fired McConnell.

In January 2017, McConnell sued Anixter in federal district court. In his two-page complaint, McConnell alleged that he was protected under USERRA and that Anixter violated his rights under the statute. The district court first dismissed the complaint in part and later granted Anixter summary judgment on the remaining counts. McConnell appeals, arguing that the district court erroneously granted Anixter's motion for summary judgment.

## II.

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *DeLuna v. Mower Cty.*, 936 F.3d 711, 716 (8th Cir. 2019). We will affirm if there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. *Id.* "To show a genuine dispute of material fact, a party must provide more than conjecture and speculation." *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 720 (8th Cir. 2019). Rather, the nonmovant "has an affirmative burden to designate specific facts creating a triable controversy." *Crossley v. Ga.-Pac. Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004) (internal quotation marks omitted).

USERRA "prohibit[s] discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). As relevant here, USERRA prevents employers from denying former service members "retention in employment . . . or any benefit of employment . . . on the basis" of the individual's status as a former service member and from taking "any adverse employment action against any person because such person . . . exercised a right provided" under USERRA. *Id.* § 4311(a)-(b). An employer violates USERRA if the individual's military status or exercise of rights protected under USERRA is a "motivating factor" in an employer's actions against the employee. *Id.* § 4311(c)(1)-(2). In protecting employees from "any adverse employment action," *id.* § 4311(b), however,

-3-

USERRA does not "provide a remedy for trivial harms," *Lisdahl v. Mayo Found.*, 633 F.3d 712, 721 (8th Cir. 2011). Rather, the employment action must be materially adverse to be actionable under the statute. *Id.* at 722.

We begin by noting that most of Anixter's actions that McConnell asserts violated USERRA are not independently actionable under the statute. For instance, McConnell mentions statements from Anixter officers he found condescending and disparaging, including ostensibly sarcastic comments from a supervisor about how McConnell was a "hero" because of his military service and comments from an unidentified human-resources official who told him Anixter "isn't a military operation" and he was "not in the military anymore." But being "ridiculed," "belittled," and "demeaned" is by itself not actionable under USERRA. *Id.* at 721-22. Similarly, the warning letter McConnell received was insufficiently adverse because it did not result in a "tangible change in working conditions that produce[d] a material employment disadvantage." *See id.* at 720; *see also Broderick v. Donaldson*, 437 F.3d 1226, 1234 n.2 (D.C. Cir. 2006) (concluding that a "disciplinary memo" did not "qualify as an adverse [employment] action" absent an effect on "grade, salary, duties, or responsibilities").

Likewise, the order McConnell received to perform some manual labor did not exceed McConnell's disability restriction, so it was not materially adverse. *See Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1060 (8th Cir. 2016) (noting that "minor changes in duties or working conditions, even . . . unwelcome ones" are "not enough to constitute an adverse employment action" unless accompanied by "reduction in salary, benefits, or prestige"). Additionally, Anixter's denial of McConnell's request for a service dog was not sufficiently adverse because he was still able to perform the essential functions of his job—demonstrated by the facts that McConnell told Anixter this denial was "[n]ot a problem" and acknowledged never asking for this request to be reconsidered despite continuing in his position for over a year after the denial—with the accommodation Anixter did provide him (the ability to take short breaks). *See id.* (noting that denial of a reasonable accommodation that is needed and requested can constitute an adverse employment

action but that an "employer is not obligated to provide an employee the accommodation he requests," only "some reasonable accommodation" that allows the employee to perform the essential functions of the job).

McConnell argues that these points, taken together with his discharge from Anixter four days after requesting a PTSD accommodation, create a "mosaic of evidence" sufficient to generate a genuine dispute of material fact about Anixter's "unlawful motivation" to fire him. We are unpersuaded.

The initial burden is on the party invoking the protections of USERRA to show that military status was a motivating factor in the materially adverse employment action. *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010 (8th Cir. 2011). To make this showing, the party may point to "a variety of factors" such as: (1) "the employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity," (2) "the proximity in time between the employee's military activity and the adverse employment action," and (3) "any inconsistencies between the proffered reason and other actions of the employer." *Id.* at 1010-11.

In *Rademacher*, we affirmed a grant of summary judgment for the employer because the plaintiff did not present sufficient evidence to make this showing. *Id.* at 1010-12. As to the first factor, although the employer initially expressed hostility upon learning that the plaintiff had to take military leave, this "initial frustration," without more, was not sufficient to support an inference that military status was a motivating factor in the employer's decision to fire the plaintiff. *Id.* at 1011. As to the second factor, the two months between the plaintiff's return from military service and his discharge by the employer "weaken[ed] any inference that his military service was a motivating factor" in his discharge. *Id.* And as to the third factor, ostensible inconsistencies in the employer's explanation for termination were insufficient to show military status was a motivating factor, particularly given evidence indicating that the plaintiff's "temperament and dissatisfaction" on the job

"played a part" in his firing and that the employer would have fired him "regardless of his military service." *Id.* at 1011-12.

Like in *Rademacher*, summary judgment was appropriate here because McConnell has failed to present sufficient evidence to make a threshold showing that his military status was a motivating factor in Anixter's decision to fire him. As to the first factor, McConnell's hiring supervisor told him that he viewed McConnell's military service as "a positive." McConnell argues he encountered hostility later due to the comments about him being a "hero" and not being in the military anymore. But if the employer's unambiguously hostile comments in *Rademacher* were insufficient under USERRA, then these ambiguous comments are also insufficient. *See id.* at 1011. As to the second factor, Anixter hired McConnell more than four years after he retired from active duty with the Army, significantly undermining "any inference that . . . military service was a motivating factor" in its decision to fire him. *See id.* As to the third factor, though the parties dispute what was said during the December 2014 call, it is undisputed that McConnell had a "disagreement" with his supervisor about a work-related directive and got "frustrated" enough during the call that he needed a break to manage his stress. This altercation occurred after Anixter notified McConnell that he would face termination if he failed to "control [his] temper."

The undisputed evidence thus indicates that McConnell's temperament played a part in Anixter's decision to fire him, which is consistent with Anixter's explanation that it fired him due to this disagreement. *See id.* at 1012. McConnell's efforts to portray this explanation as pretextual given he was fired four days after requesting a short break to manage his PTSD are unconvincing in light of his own admissions that his supervisor had no issue providing this accommodation and made no mention of McConnell's military status or need for accommodations during either the December 2014 call or the subsequent conversation in which Anixter fired him. In short, McConnell's argument relies on "conjecture and speculation" that does not "show a genuine dispute of material fact" concerning Anixter's motivations. *See Zayed*, 913 F.3d at 720.

-6-

## III.

McConnell has not shown a genuine dispute of material fact that his military status was a motivating factor in Anixter's decision to fire him. Thus, we affirm.

_____