# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2321
_____

Andrew J. Kelly, an individual

*Plaintiff - Appellant*

v.

Omaha Public Power District

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: January 10, 2023
Filed: July 28, 2023
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

KELLY, Circuit Judge.

After serving in the United States Navy, Andrew Kelly became eligible to receive education benefits under the G.I. Bill, which he used to pursue a bachelor's degree. Kelly also sought tuition assistance from his employer, Omaha Public Power District (OPPD), under the company's Employee Education Program, but OPPD denied Kelly's request because his G.I. Bill benefits fully covered his tuition expenses. Kelly sued, claiming that OPPD's denial of company-provided tuition

assistance based on his receipt of G.I. Bill benefits amounted to unlawful discrimination under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301–4335. The district court[1] granted summary judgment in OPPD's favor, and Kelly appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Kelly served in the Navy for eight years and was honorably discharged in 2006. As a result of his service, Kelly became eligible to receive education benefits under what is known as the Montgomery G.I. Bill,[2] see 38 U.S.C. § 3011. Enacted in 1984, the Montgomery G.I. Bill provides eligible recipients "pursuing an approved program of education" with up to 36 months of "educational assistance benefits," which can be used to cover "expenses" related to a recipient's "subsistence, tuition, fees, supplies, books, equipment, and other educational costs." Id. §§ 3013(a)(1), 3014(a). To qualify for these benefits, a service member must, among other things, satisfy a minimum-service requirement, have a high school diploma or equivalent or a minimum number of college credits, and agree to have his or her military pay reduced by $100 per month for 12 months of service. Id. § 3011(a), (b)(1). Benefits are paid directly to eligible recipients, and the monthly

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

[2]Kelly also became eligible to receive education benefits under the Post-9/11 G.I. Bill, see 38 U.S.C. §§ 3301–3327, but he confirmed in a deposition that he only received benefits under the Montgomery G.I. Bill during the time period at issue in this case. Accordingly, when we refer here to the "G.I. Bill benefits" that Kelly received, we mean those that he received under the Montgomery G.I. Bill specifically.

benefit amount depends on the type of education the recipient is pursuing and the number of courses in which he or she is enrolled.[3]

After leaving the military, Kelly began working at OPPD as a chemistry technician. Among the benefits that OPPD offered its employees was an Employee Education Program (EEP), under which the company provided tuition assistance for approved courses at a college, university, or vocational school. Participating employees could have their tuition costs and certain other fees reimbursed up to a "maximum payout of $5,000 per calendar year." As is relevant here, however, OPPD's EEP policy provided the following:

> [T]his assistance may not be available to employees receiving tuition assistance from other sources, i.e.[,] Pell Grants, VA Education Benefits, Scholarships, etc., unless these sources do not cover the tuition in full. In these cases, assistance is available for the balance of tuition, as long as the employee has not reached maximum payout for the calendar year.

Kelly enrolled in a bachelor's degree program at Bellevue University in Nebraska in 2010 and began taking classes that fall. In early 2011, Kelly applied for EEP benefits to cover the cost of his spring-semester courses. OPPD approved Kelly's application and paid $4,070 directly to Bellevue University, which covered the full cost of Kelly's tuition and fees for the spring term. According to Kelly, he was not receiving G.I. Bill benefits at the time of OPPD's payment because he was "still going through all the paperwork associated with getting approval through the government." A few months later, Kelly applied for the remaining $930 in EEP benefits for which he was eligible, which he intended to use to help pay for summer

[3]For instance, as of October 1, 2022, eligible service members who (1) served at least three years on active duty without a break in service and (2) are enrolled full-time at a college or university can receive up to $2,210 in benefits per month under the Montgomery G.I. Bill. See U.S. Dep't of Veterans Affs., "Montgomery GI Bill Active Duty (Chapter 30) rates," https://www.va.gov/education/benefit-rates/montgomery-active-duty-rates (last updated May 3, 2023).

classes. By that point, however, Kelly was receiving G.I. Bill benefits, including benefits that retroactively compensated him for the courses he had already completed, and he disclosed as much to OPPD. OPPD subsequently denied Kelly's application for additional EEP benefits, explaining in an email that because Kelly was receiving "duplicate educational aid" under the G.I. Bill that "exceed[ed] the costs of [his] tuition," his request for EEP benefits "d[id] not fall within the guidelines of the OPPD Employee Education Plan."[4] OPPD obtained reimbursement from Bellevue for the $4,070 it had previously paid for Kelly's spring 2011 tuition. Bellevue then billed Kelly for that amount, which was ultimately covered by his G.I. Bill benefits.[5]

In May 2011, Kelly contacted Paula Pittman, OPPD's assistant manager of labor relations, to challenge OPPD's decision to deny him EEP benefits. Kelly claimed that OPPD was denying him an employment benefit based on his status as a military veteran in violation of USERRA. In response, Pittman explained that Kelly was being denied EEP benefits because his G.I. Bill benefits "already cover[ed]" all of his tuition costs, meaning "there [was] nothing" for OPPD "to reimburse." Kelly did not reapply for EEP benefits after this exchange because, according to him, if he was "going to continue working for OPPD and apply for promotions and job advancements," he knew "not to get on" the company's "bad side."

---

[4]The record is unclear as to when, exactly, Kelly (1) first applied for EEP benefits, (2) started receiving G.I. Bill benefits, and (3) was denied the former because he was receiving the latter. We note, however, that the timing of these events is not material to our analysis here.

[5]Kelly stated in a deposition that the G.I. Bill benefits he received exceeded his tuition costs for both the fall 2010 and spring 2011 semesters, meaning that he incurred "no out-of-pocket expenses associated with tuition and fees."

Kelly sued OPPD in federal court,[6] alleging that the company violated his rights under USERRA by denying him EEP benefits "he otherwise would have received . . . but for his service" in the military.  OPPD and Kelly filed cross-motions for summary judgment, and the district court granted OPPD's motion, denied Kelly's, and dismissed Kelly's complaint.  The district court concluded that "[o]ffsetting tuition assistance by the amount an employee receives through G.I. Bill benefits is not the same as denying tuition assistance on the basis of an employee's military status."  Accordingly, the district court explained, "an employer does not violate USERRA simply because it takes an employee's G.I. Bill benefits into consideration when doling out tuition assistance."  And since Kelly failed to provide "sufficient evidence from which a reasonable jury" could find that OPPD had otherwise "violated USERRA," the court granted summary judgment in OPPD's favor.  Kelly now appeals.

## II.

We review a district court's "resolution of cross-motions for summary judgment *de novo*."  Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc., 34 F.4th 649, 652 (8th Cir. 2022).  Summary judgment in OPPD's favor is appropriate if, "after viewing the evidence in the light most favorable" to Kelly and "affording [him] all reasonable inferences, there are no genuine issues of

[6]Kelly also filed a complaint with the Veterans' Employment and Training Service (VETS), which is the agency within the Department of Labor tasked with "provid[ing] assistance to any person with respect to the employment and reemployment rights and benefits to which such person is entitled" under USERRA. 38 U.S.C. § 4321; see id. § 4322 (authorizing VETS to investigate complaints regarding an employer's alleged failure or refusal to comply with USERRA's provisions).  Following an investigation, VETS notified OPPD in September 2011 that it had determined that Kelly's "rights under USERRA were violated" when the company denied him EEP benefits and thus "forced" him to use his G.I. Bill benefits to cover his tuition costs.  VETS, however, does not have the authority to order compliance with USERRA.  See 20 C.F.R. § 1002.290.  And while Kelly mentions VETS's determination that OPPD violated USERRA in his brief, he does not contend that we owe that determination any deference here.

-5-

material fact" and OPPD "is entitled to judgment as a matter of law." Id.; see Fed. R. Civ. P. 56(a).

USERRA "prohibits employment discrimination on the basis of military service." Rademacher v. HBE Corp., 645 F.3d 1005, 1010 (8th Cir. 2011) (quoting Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 551 (8th Cir. 2005)); see 38 U.S.C. § 4301(a)(3). As relevant here, the statute provides that a person who "has performed . . . service" in the military "shall not be denied . . . any benefit of employment by an employer on the basis of" that past service. 38 U.S.C. § 4311(a). A "benefit of employment" includes "any advantage, profit, privilege, gain, status, account, or interest . . . that accrues by reason of . . . an employer policy, plan, or practice." Id. § 4303(2); see Maxfield, 427 F.3d at 551 ("USERRA defines 'benefit of employment' very broadly . . . ."). And because USERRA "was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries." Rademacher, 645 F.3d at 1010 (quoting Maxfield, 427 F.3d at 551).

The parties do not dispute that Kelly, because of his past service in the Navy, is a veteran covered by USERRA's anti-discrimination provision. See 38 U.S.C. § 4311(a). Nor do they dispute that EEP benefits were a "benefit of employment" that OPPD denied to Kelly. The central issue here is whether that denial decision, which OPPD made because Kelly was also receiving G.I. Bill benefits, amounted to discrimination on the basis of Kelly's status as a military veteran in violation of USERRA. Kelly argues that it did. OPPD, on the other hand, contends that its denial of Kelly's request for EEP benefits did not violate USERRA because it denied such benefits to any employee who simultaneously received other forms of tuition assistance, whether from the military or another source, that were sufficient to cover the employee's tuition expenses in full.

An employer violates USERRA's anti-discrimination provision if an employee's military status is a "motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of" that

-6-

status.  38 U.S.C. § 4311(c)(1); see McConnell v. Anixter, Inc., 944 F.3d 985, 988 (8th Cir. 2019).  An employee alleging a discrimination claim under USERRA "must make the initial showing that military status was a motivating factor in the adverse employment action" at issue.  Rademacher, 645 F.3d at 1010.  If such a showing is made, the employer "can then defeat the claim by proving 'by a preponderance of evidence, that the action would have been taken despite the protected status.'" Lisdahl v. Mayo Found., 633 F.3d 712, 718 (8th Cir. 2011) (citation omitted); see Maxfield, 427 F.3d at 551 (noting that § 4311(c) shifts the burden of production and persuasion to the employer).  "In determining whether veteran status motivate[d] the employer's conduct, all record evidence may be considered," including the employer's "explanation for the action taken."  Lisdahl, 633 F.3d at 718.  And an employee "may show discriminatory motivation with direct or circumstantial evidence."  Rademacher, 645 F.3d at 1011.

In granting summary judgment to OPPD, the district court concluded that Kelly had failed to make an initial showing that "his military status motivated OPPD to deny him EEP benefits."  Kelly challenges this conclusion on appeal, arguing that he "adduc[ed] both direct and circumstantial evidence upon which a reasonable jury could find that his military service was a motivating factor" in OPPD's decision.

Kelly first asserts that OPPD's admission that it denied him EEP benefits because he was also receiving G.I. Bill benefits constitutes "direct evidence" of discrimination based on his status as a military veteran.  It is undisputed that OPPD's denial decision was made pursuant to an internal EEP policy that, by its express terms, did not extend company-provided tuition assistance to employees who received duplicative education benefits "from other sources," including the Department of Veterans Affairs (the VA).  In Kelly's case, he was denied EEP benefits because he was also receiving G.I. Bill benefits, and he qualified for the latter benefits because of his prior military service.  But as Kelly acknowledges, not all military veterans are eligible to receive G.I. Bill benefits.  See 38 U.S.C. § 3011(a)(1)–(2) (imposing a minimum-service requirement and requiring that a service member have a high school diploma or equivalent or a minimum number of

college credits); id. § 3011(c)(1) (providing that service members can elect not to participate in the Montgomery G.I. Bill program). And under the plain language of OPPD's policy, veterans who are not so eligible could have qualified for EEP benefits. Thus, a policy like OPPD's that conditions an employee's eligibility for an employment benefit on whether the employee is receiving similar benefits from another source—including the military—is not necessarily tantamount to one that impermissibly discriminates against employees who have served in the military. That is, an employee's military *status* and his or her eligibility for military *benefits*, while oftentimes related, are not inextricably linked.

Moreover, under OPPD's policy, employees who had previously served in the military were eligible to receive EEP benefits even if they also received G.I. Bill benefits, so long as the latter did not cover their tuition costs "in full." Indeed, as part of its motion for summary judgment, OPPD proffered evidence showing that one employee who received G.I. Bill benefits that only covered 60 percent of his tuition expenses was deemed "eligible for EEP benefits" and was accordingly reimbursed for the 40 percent of tuition costs that he had "personally paid" out of pocket. This evidence underscores that OPPD did not deny EEP benefits to all military veterans, or even to all military veterans who also received G.I. Bill benefits. Rather, it denied EEP benefits only to those employees who, like Kelly, received education benefits from other sources that were sufficiently generous such that there were no tuition expenses left for OPPD to reimburse.

In short, the record indicates that OPPD denied Kelly's request for EEP benefits not because of his prior military service—which is what USERRA prohibits—but because he was receiving duplicative tuition assistance from another source, which, in Kelly's case, happened to be the military. And denying EEP benefits on that basis, we conclude, does not amount to unlawful discrimination under USERRA.[7]

_____

[7]This does not mean, of course, that any policy governing employment benefits that takes an employee's receipt of G.I. Bill benefits into account is categorically lawful. We conclude only that, based on the record before us, the

-8-

Our conclusion aligns with the First Circuit's decision in Martinez v. Sun Life Assurance Co. of Canada, 948 F.3d 62 (1st Cir. 2020). The plaintiff in that case argued that the administrator of an employee benefit plan violated USERRA by offsetting the amount of his long-term-disability insurance benefits under the plan by the amount of "service-connected disability compensation" he separately received from the VA. Id. at 64–65. The First Circuit affirmed judgment in favor of the plan administrator after concluding that the "simple fact" that the plaintiff's plan benefits "were reduced by the amount of his Veterans' Benefits" did not necessarily mean that such a reduction was "motivated" by the plaintiff's "status as a servicemember." Id. at 74. According to the court, the "fundamental problem" with the plaintiff's USERRA claim was his failure to allege facts suggesting that the plan administrator reduced his plan benefits because he had received "military-related benefits" specifically; indeed, the plan administrator had also offset the plaintiff's plan benefits by the amount of his Social Security disability benefits. Id. Thus, "[t]he only role" the plaintiff's "military status" played in the plan administrator's decision to reduce his plan benefits was the fact that one of the sources of his additional disability benefits "was the VA." Id. And "[t]hat fact alone," the court determined, was "not enough to plausibly allege" a violation of USERRA's anti-discrimination provision. Id.

Like the plan administrator in Martinez, OPPD denied Kelly's request for EEP benefits not because he was "receiving military-related benefits" per se, id., but instead because he was receiving duplicative tuition assistance from another source that happened to be the military. And we agree with the First Circuit that denying an employment benefit based on an employee's receipt of duplicative military benefits does not, standing alone, violate USERRA. See id.

---

specific tuition assistance program at issue in this case does not unlawfully discriminate against employees based on their military status.

-9-

Next, Kelly contends that "circumstantial evidence" in the record "supports the reasonable inference" that his status as a military veteran was a motivating factor in OPPD's decision to deny him EEP benefits. According to Kelly, after he contacted Paula Pittman to challenge OPPD's denial decision, Pittman "lashed out" at him and "treat[ed] him with hostility," and he claims that Pittman's behavior qualifies as "undisputed evidence of OPPD's animus" toward his military status. But as the district court noted, while the communications from Pittman that are in the record indicate that she was clearly frustrated with Kelly, those communications did not disparage the fact that Kelly was a military veteran or express hostility toward veterans more generally. Thus, Pittman's comments to Kelly, without more, fail to give rise to an inference of discrimination based on his military status. See McConnell, 944 F.3d at 990 ("[I]f the employer's unambiguously hostile comments in Rademacher were insufficient under USERRA, then . . . ambiguous comments [from a supervisor and human-resources official] are also insufficient."); cf. Lisdahl, 633 F.3d at 722 (explaining that "garden-variety complaints about minor slights and disagreements with supervisors . . . are not protected by USERRA"). Kelly also points to a comment from an OPPD human-resources specialist suggesting that OPPD would not have denied him EEP benefits if he had simultaneously received tuition support from a "rich aunt." But OPPD's EEP policy is not rendered unlawfully discriminatory toward veterans and service members merely because it does not encompass every plausible non-military source of duplicative education funding. We therefore agree with the district court that the record evidence on which Kelly relies fails to create a genuine factual dispute from which a reasonable jury could find that OPPD violated USERRA.

In sum, Kelly has "failed to present sufficient evidence to make" the requisite "threshold showing" that his status as a military veteran was "a motivating factor" in OPPD's decision to deny him EEP benefits. McConnell, 944 F.3d at 990. His discrimination claim under USERRA thus fails, and the district court properly granted summary judgment in OPPD's favor.

## III.

For the reasons explained above, we affirm the district court's judgment.

_____