**BOSTON SHIPPING ASSOCIATION, INC., Plaintiff, Appellee,**

v.

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION (AFL–CIO): Its Affiliated Local 1066; and Its Officers, William McNamara, Hugh Twomey, Charles Searle, Paul Levins and James Watson, Defendants, Appellants.**

No. 81–1026.

United States Court of Appeals, First Circuit.

Argued June 3, 1981.

Decided Sept. 8, 1981.

Rehearing Denied Sept. 30, 1981.

Joseph T. Doyle, Boston, Mass., with whom Joseph T. Doyle, Jr., and Condon & Doyle, Boston, Mass., were on brief, for defendants, appellants.

Astrid C. Glynn, Boston, Mass., with whom Thomas E. Clinton, Livonia, Mich., and Glynn & Dempsey, Boston, Mass., were on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, MAZZONE,* District Judge.

COFFIN, Chief Judge.

The International Longshoremen's Association and its local union No. 1066 (union) appeal from an order of the district court, entered without opinion, enforcing an ad-

* Of the District of Massachusetts, sitting by designation.

verse arbitration award. The district court, at the request of appellee Boston Shipping Association, Inc. (BSA), the party seeking enforcement, added to its enforcement order a provision requiring the parties to ascribe "mandatory precedential effect" to the award during the term of the parties' 1980–83 collective bargaining agreement.[1] BSA requested this additional provision because the 1977–80 collective bargaining agreement had expired before the award was rendered and the union did not regard the award as binding under the new contract.

■ The award defined the geographic boundaries of Berth 13 at the Castle Island terminal facility for purposes of determining manning requirements under Article 12 of the collective bargaining agreement. Although the union appealed from the entire order of the district court, it does not argue that the award failed to draw its essence from the collective bargaining agreement or was otherwise invalid. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Accordingly, we affirm that part of the district court's order enforcing the arbitration award.

The parties differ over the meaning of the second and third paragraphs of the district court's order giving the award "mandatory precedential effect" and requiring the parties to "abide by and honor" the award during the 1980–83 contract term. BSA contends that this language merely requires the union to abide by the award during the new contract term until it gets an award more to its liking. The union—the party who would face contempt—takes the broader view that the language requires it to accept the award as a non-arbitrable contractual provision for the duration of the 1980–83 agreement.

■ We first address the union's interpretation. The language of the order gives the award binding precedential effect during the entire 1980–83 term, without provision for subsequent arbitrations or negotiations. A plausible reading of the language is that its effect, if not its intent, is to restrict the union's resort to the arbitral forum during the 1980–83 contract term, either by barring the right to rearbitrate the boundaries of Berth 13 (and possibly other similar locales) or, much the same, by giving BSA an arbitral defense of res judicata.

■ To the extent the order can be read in this manner, we must agree that it is improper. The arbitrator's award contained no such provision;[2] nor did the parties submit the effect of the award on future arbitrations as an issue before the arbi-

---

1. The district court's order provided in full:
   "ORDER
   Upon consideration of Plaintiff's Motion to Confirm and Enforce the Award in Arbitration, and after hearing at which both parties were represented it is hereby ordered and decreed that:
   1. The Opinion of the Arbitrator rendered on December 26, 1980 in AAA Arbitration No. 1130–1187–80, which arbitration was conducted pursuant to the Order of this Court, is hereby confirmed.
   2. It appearing that all terms of the contract which said Award and Opinion interpreted and relied upon having been continued by the parties in the contract negotiated by them for the contract period commencing October 1, 1980 and ending September 30, 1983, and it further appearing that no other additions, deletions or alterations having been made by the parties in said contract to vary the terms thereof (insofar as they are material to the Arbitrator's Award) from the terms of the contract in effect October 1, 1977 through September 30, 1980 as interpreted by the Arbitrator, it is hereby ordered that the parties shall ascribe to the Arbitrator's Award a mandatory precedential effect and that said Award and Opinion shall be binding upon the parties during the term of the contract currently in effect between the parties.
   3. The parties are to abide by and honor said Award and Opinion of the Arbitrator during the contract term commencing October 1, 1980 and ending September 30, 1983."

2. The arbitrator's award provided:
   "AWARD
   The use by the ITO of New England of a certain area south of the Northway and within the waterside designations of Berth 13 at Castle Island for storage of container type cargo does not require an additional set-up as defined in Article 12 of the contract between the parties."

trator. Since the *Steelworkers Trilogy*,[3] the federal courts play an extremely limited role in labor arbitration. They are, and should be, most reluctant in the course of enforcing an arbitration award to modify, supplement or resolve ambiguities in the arbitrator's decision, even when it would appear in keeping with the intention of the parties to do so. *See Locals 2222, 2320– 2327, International Brotherhood of Electrical Workers v. New England Telephone and Telegraph Co.*, 628 F.2d 644, 647 (1st Cir. 1980); *New Orleans S.S. Ass'n v. General Longshore Workers, Local No. 1418*, 626 F.2d 455, 468 (5th Cir. 1980), *cert. granted sub nom. Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981) ("arbitrators' awards can only be enforced as written"); *San Antonio Newspaper Guild, Local 25 v. San Antonio Light Division*, 481 F.2d 821, 825 (5th Cir. 1973); *Hanford Atomic Metal Trades Council v. General Electric Co.*, 353 F.2d 302, 307–08 (9th Cir. 1966). When enforcement requires an interpretation of the arbitrator's award, the proper course is to remand to the arbitrator for clarification, *see, e. g., Teamsters Local No. 25 v. Penn Transportation Corp.*, 359 F.Supp. 344, 350 (D.Mass.1973), a course which, as far as the record shows, neither party pursued here.

We have little doubt that were a similar dispute concerning the boundaries of Berth 13 to arise, a future arbitrator would follow the earlier award, whether or not bound to by court order. *See, e. g., Todd Shipyards Corp.*, 69 Lab.Arb.Rep. 27 (BNA 1976).[4] However reasonable, we cannot approve an order requiring that result.

"Whether the award can be given an effect akin to res judicata or stare decisis with regard to future disputes that may arise between the parties, neither the district court nor this court should decide. If the parties do not agree, that issue itself is for arbitration." *New Orleans S. S. Ass'n v. General Longshore Workers, Local 1418*, 626 F.2d at 468.

The processing of even frivolous grievances may have a therapeutic effect in the industrial environment of which we who are unfamiliar with that setting may be only dimly aware. *Steelworkers v. American Mfg. Co.*, 363 U.S. at 568, 80 S.Ct. at 1346.

The more modest interpretation of the district court's order advanced by BSA raises thornier problems. The issue, simply put, is what is to happen in the interim, pending another arbitration: must the union abide by the award rendered under the old contract, or may it seek to revert to the pre-award status quo? The union argues that the award was limited to the contract under which it arose and that to give the award prospective effect during the new contract period the court must necessarily interpret the new contract. Contract interpretation, contends the union, is the exclusive province of the arbitrator; therefore, the court's order contravenes the national labor policy in favor of arbitration as the means to settle contract disputes. BSA argues that to permit the union to flaunt the award before rearbitrating would render the award completely meaningless. The award, BSA maintains, was not limited to the old contract; indeed, it was not rendered until the old contract had expired. BSA points out, and the union concedes, that no relevant contract term or custom

**3.** *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**4.** A second arbitrator is, nevertheless, ordinarily not *bound* to accept the decision of the first, even under the same contract:

"Just as different judges or juries may each reasonably read the same facts or the same contract language different ways, so too may arbitrators, and so long as the decision of each 'draws its essence' from the writing, from the negotiations and from plant practices, each is within the power of the arbitrator and must be enforced." R. Gorman, *Basic Text on Labor Law* 599 (1976).
*See American Sterilizer Co. v. Local No. 832, United Automobile Workers*, 278 F.Supp. 637 (W.D.Pa.1968).

has changed since the award was rendered nor did the parties bargain over the arbitrated issue during negotiations preceding the 1980–83 contract. Thus, BSA concludes, to permit the union to ignore the award would make the arbitration a sham and trivialize arbitral dispute resolution— again in contravention of the national labor policy favoring arbitration.

The Fifth Circuit recently encountered a similar clash of positions in *Oil, Chemical and Atomic Workers, Local No. 4–16000 v. Ethyl Corp.*, 644 F.2d 1044 (5th Cir. 1981). In *Oil Workers* the union faced a recidivist employer who continued to place supervisory personnel in hourly rated jobs, despite an arbitration award declaring a particular instance of that practice to be a violation of the collective bargaining agreement and ordering the employer to desist from "like" violations in the future. The union attempted to enforce its award, obtained in 1973, in what, it claimed, was a similar case arising in 1979. To accommodate the competing goals of national labor policy of fostering arbitration while preserving the integrity of past awards, the court devised a test of "material factual identity": if it is beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion, the new dispute is a "like" dispute subject to enforcement under the prior award. *Id.* at 1051. To apply this test, the court need not interpret the collective bargaining agreement or the award, but need scrutinize the latter only to the extent necessary to determine if any colorable argument can be made that it would not apply to the case before it. Under this approach, if there is an arguable material difference, the dispute is for the arbitrator; if not, the parties are bound by their prior arbitration.

■ We think this analysis is instructive in the similar situation presented here. Unlike the award in the *Oil Workers* case, the present award was not expressly directed at future "like" violations. But, because the subject of the award was not a discrete historical incident but rather the definition of a physical location, it need not have been so directed; the award was inherently prospective as to the dimensions of Berth 13 existing at the time of the award. The issue, then, to reformulate the union's position, is whether the prior award may be enforced in a future situation with a single perhaps arguable difference—a new collective bargaining agreement. We think so.

The issue before the arbitrator was whether, by custom or practice, a certain area of the Castle Island terminal facility was a part of Berth 13. If not a part of the berth, the union claimed the right under Article 12 of the contract to have additional workers assigned when that area was used for loading operations. The arbitrator decided that Article 12 did not speak to the definition of Berth 13 and that there was no relevant bargaining history. He considered the evidence of custom presented by the union, and determined that the union had failed to sustain its burden of proof on that issue. He concluded, therefore, that in the absence of contrary past custom, the employer was entitled under Article 3, the management rights provision of the contract, to use the contested area without assigning additional employees.

Before the district court and on appeal the only difference contended for by the union between the present situation and that before the arbitrator is that there is now a new contract. The union has conceded or at least not disputed BSA's statement that the relevant provisions of the contract are the same, that no change in custom has occurred and that the parties did not discuss the issue of Berth 13 during contract negotiations. Under these circumstances, while the new contract term is undeniably a factual difference, we perceive no argument that the difference is material. The determinants of the arbitrator's decision were custom, contract language and bargaining history. Each of these is unchanged under the new contract. The union has cited no authority for the proposition that the commencement of a new contract term, standing alone, voids prior awards, nor do we see

any justification for such a rule. To the contrary, automatic expiration of arbitration awards with the contract under which they were decided would have a disastrous effect on industrial stability.[5]

We conclude, then, as did the district court, that absent any arguable basis for deferring, in the first instance, to a new arbitration, BSA is entitled to enforce the arbitration award in the new contract term. This conclusion does not foreclose the union from pursuing arbitration or from attempting to negotiate a different agreement with BSA. In the interim, however, the award is controlling on the narrow issue it decided, and no other. We believe this resolution accommodates the parties' need for a meaningful arbitral remedy, as well as avoiding the dangers of judicial intervention in the merits of the contractual dispute or the prior award. Accordingly, we shall affirm the first paragraph of the district court's order, vacate the second and third paragraphs, and remand to the district court for entry of an appropriate form of order setting forth, as we have described them, the rights of the parties during the present contract term. The order should make it clear that the arbitration award binds the parties and is judicially enforceable unless a material change of circumstances arises, but should not purport to limit the parties' rights to arbitrate in the future or to dictate the result future arbitrators must reach.[6]

---

5. Although the *Oil Workers* opinion makes no reference to the duration of the collective bargaining agreement between the parties, we may safely assume that it was no longer than three years. D. Leslie, *Cases and Materials on Labor Law* 74 (1979) (in practical effect, maximum duration of collective bargaining agreements is three years). Thus, between the prior award in *Oil Workers* (1973) and the subsequent dispute (1979) there was at least one, and probably more contract transitions. The change in contracts is not mentioned in the *Oil Workers* opinion.

6. We were informed at oral argument that, although the parties have agreed to the terms of the 1980–83 agreement and have operated under its provisions since September 30, 1980, the union has yet to execute formally a memorandum of understanding between the parties. Should the resolution of this matter produce a change in the relevant circumstances, the union may seek relief from the district court.