# United States Court of Appeals
## For the First Circuit

No. 05-2799

MASSACHUSETTS NURSES ASSOCIATION,

Plaintiff, Appellant,

v.

NORTH ADAMS REGIONAL HOSPITAL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Kenneth P. Neiman, U.S. Magistrate Judge]

Before

Boudin, Chief Judge,
Selya, Circuit Judge, and
Schwarzer,* Senior District Judge.

Mark A. Hickernell, with whom Alan J. McDonald and McDonald, Lamond & Canzoneri were on brief, for appellant.
    Robert B. Gordon, with whom David C. Potter and Ropes & Gray LLP were on brief, for appellee.

October 26, 2006

_____

*Of the Northern District of California, sitting by designation.

**SELYA**, **Circuit Judge**.  This appeal requires us to mull the circumstances in which a union, having successfully arbitrated a grievance, may leverage the award to bypass procedures prescribed by a collective bargaining agreement and obtain direct federal court relief for subsequent episodes of alleged employer misconduct.  In the case at hand, the district court thwarted the union's attempt to short-circuit the grievance process, finding too great a disparity between the facts underlying the initial complaints and those giving rise to the subsequent complaints. After careful consideration, we affirm.

## I.

### Background

North Adams Regional Hospital (the Hospital) employs nurses represented by the Massachusetts Nurses Association (MNA). This dispute arises out of a collective bargaining agreement (CBA) between the two organizations.  Article 18.07 of the CBA contains a provision entitled "Standards of Nursing Practice," which requires the Hospital to "only keep and admit the number of patients that registered nurses can safely care for" and to "take measures such as adding nurses [and] stopping admissions . . . to ensure that this occurs."  The CBA further provides a stereotypical grievance procedure, culminating in binding arbitration, to resolve covered disputes.

In 2002, nurses employed by the Hospital filed approximately nine reports alleging inadequate staffing on a particular floor (Three North) in violation of Article 18.07. The MNA converted these complaints into formal grievances. Arbitration hearings took place in 2003 and 2004. On February 21, 2005, the arbitrator, Michael Stutz, found that the Hospital had transgressed the CBA and issued a remedial order. We need not recount all the particulars of the arbitrator's entire decision and order (collectively, the Stutz Award); for now, it suffices to repeat the order alone:

> a) The Hospital shall cease and desist violating Article 18.07 of the Agreement;
>
> b) The Hospital shall pay the MNA an amount of money equal to the pay of one RN for each of the nine shifts grieved; and
>
> c) The Hospital shall pay the RN's working the nine shifts time and one half for those nine shifts, i.e. the difference between time and one half pay and what they actually were paid.

In the spring of 2005 — some three years after the events that gave rise to the initial grievances — nurses at the Hospital reported what they believed to be additional violations of Article 18.07. While at least one of these reports dealt with an event on Three North, the vast majority of them involved events occurring in other areas of the Hospital. Rather than converting these complaints into one or more formal grievances, the MNA attempted a short-cut; it filed a direct action in the federal district court,

seeking enforcement of the cease-and-desist portion of the Stutz Award.[1]  That action rested on section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, which authorizes federal district courts to enforce collective bargaining pacts and, thus, to enforce labor arbitration awards issued pursuant to such pacts.[2]  See Textile Workers v. Lincoln Mills, 353 U.S. 448, 451 (1957).  This means that where, as here, a collective bargaining agreement contains an arbitration clause, an arbitral award is akin to a contractual obligation that can be enforced through a civil action under section 301.  See Local 2322, Int'l Bhd. of Elec. Workers v. Verizon New Engl., Inc., ___F.3d ___, ___ (1st Cir. 2006) [No. 06-1169, slip op. at 5].

The Hospital answered the complaint.  It then moved for judgment on the pleadings, see Fed. R. Civ. P. 12(c), arguing that the 2005 reports arose out of a variegated set of factual predicates materially different from the factual predicate on which the earlier grievances reposed and that, therefore, enforcement constituted an inappropriate avenue for relief.  The MNA opposed the motion.  By consent of the parties, the matter was entrusted to a magistrate judge for decision.  See 28 U.S.C. § 636(c); Fed. R.

_____

[1]The MNA also sought to adjudge the Hospital in violation of another portion of the Stutz Award.  That dispute has been resolved.

[2]The parties speak, interchangeably, of both "confirming" and "enforcing" the Stutz Award.  Because enforcement seems more apt in the context of this case, we use that terminology.

-4-

Civ. P. 73. After a comprehensive analysis of the Stutz Award and the applicable law, the judge agreed with the Hospital's characterization and allowed the motion. This timely appeal followed.

## II.

### Analysis

Both parties rely heavily on our prior pronouncements regarding the enforcement of arbitral awards. Consequently, we start there.

In previous cases, we have recognized that, at least since the Supreme Court decided the so-called Steelworkers trilogy, see United Steelworkers v. Am. Mfg. Co., 363 U.S. 564 (1960); United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574 (1960); United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593 (1960), the federal courts are to play a narrowly circumscribed role in the administration of labor arbitration. See, e.g., Boston Shipping Ass'n, Inc. v. Int'l Longshoremen's Ass'n, 659 F.2d 1, 3 (1st Cir. 1981). We have been particularly loath to take too expansive a view of the precedential effect of arbitration awards, emphasizing that this phenomenon is primarily a matter for the arbitrator, not for a court. See Courier-Citizen Co. v. Boston Electrotypers Union No. 11, 702 F.2d 273, 280 (1st Cir. 1983). This does not denote, however, that unions invariably must be consigned to Sisyphean labors, forced to arbitrate the same

-5-

grievance again and again.  See <u>Locals 2222, 2320-2327, Int'l Bhd.</u> <u>of Elec. Workers</u> v. <u>New Engl. Tel. & Tel. Co.</u>, 628 F.2d 644, 649 (1st Cir. 1980).  In appropriate circumstances, a court may order the enforcement of a prior arbitration award as a means of resolving a subsequent labor dispute.  See, <u>e.g.</u>, <u>Boston Shipping</u>, 659 F.2d at 4.

The trick, of course, is discerning what circumstances are sufficient to warrant bypassing the normal grievance procedures.  Even though we enforced the original arbitral award in <u>Boston Shipping</u>, we made clear that this result was the exception rather than the rule; such an anodyne is available only if "it is beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration."  <u>Id.</u>  We fleshed out that commentary two years later, stating that:

> Only where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand, will a court order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure.

<u>Derwin</u> v. <u>Gen. Dynamics Corp.</u>, 719 F.2d 484, 491 (1st Cir. 1983).

Read carefully, these two decisions illustrate the proper application of the standard.  In the former case, the new dispute was identical to the original dispute except for the intervening renewal of the collective bargaining agreement; accordingly,

-6-

enforcement was an available remedy.  Boston Shipping, 659 F.2d at
4.  In the latter case, we refused to follow that course because
the union had failed to show a new and identical dispute.  See
Derwin, 719 F.2d at 491 (warning that this court would not "put its
imprimatur upon an arbitral award in a vacuum").  This cautious
approach toward the hopscotch enforcement of arbitration awards
vis-á-vis new grievances is solidly within the mainstream of labor
law as elucidated by other courts of appeals.  See, e.g., Local
1545, United Mine Workers v. Inland Steel Coal Co., 876 F.2d 1288,
1295-97 (7th Cir. 1989) (requiring that facts underlying prior
award and those underlying subsequent violation be "substantially
identical" in order to warrant enforcement); United Mine Workers,
Dist. 5 v. Consol. Coal Co., 666 F.2d 806, 811 (3d Cir. 1981)
(explaining that enforcement of a prior award requires a court to
say with "positive assurance" that the award was intended to cover
the new dispute); Oil, Chem. & Atomic Workers Int'l Union v. Ethyl
Corp., 644 F.2d 1044, 1050 (5th Cir. 1981) (delineating a
substantial similarity standard).

Mindful of this well-manicured legal landscape, our
primary task here is to determine whether the Stutz Award was
intended to have a prospective effect, and if so, whether there is
any colorable basis for denying its applicability to the new
incidents.  We turn now to that task.

To its credit, the MNA attempts to meet the Hospital's challenge head-on. It does not question the applicability of Derwin and Boston Shipping but, rather, contends that the current dispute qualifies for enforcement under our historic standard. Its thesis is that because the prior and current disputes share a common factual nucleus — all of them involve alleged violations of Article 18.07 — there is no material factual difference and, therefore, enforcement is appropriate. To justify this result, the MNA notes that the first page of the Stutz Award — the three-paragraph remedial order quoted above — contains no specific reference to Three North. Building on that foundation, it argues that the Stutz Award applies hospital-wide. Its fallback position is that it should at least have been allowed to proceed in the district court with the alleged violations that occurred on Three North.

The Hospital counters that context is crucial and that, taking context into account, there is at least an arguable basis for rejecting the claim that the new dispute is materially indistinguishable from the old dispute (and, thus, for rejecting the applicability of the Stutz Award). In mounting this counter-argument, the Hospital goes beyond the remedial order and points to the arbitrator's statement, in the body of the decision, that "the most important goal of remedy in this case is [to] assure that there is no repetition of the circumstances that prevailed on at

least nine occasions in May and June 2002 <u>on</u> <u>Three</u> <u>North</u>"
(emphasis supplied). It also adverts to the arbitrator's singular
focus on Three North in his descriptions of staffing violations.
Finally, it directs our attention to facts properly before us
evidencing that it has made significant staffing changes, on Three
North and elsewhere throughout the institution, since the emergence
of the grievances that spawned the original arbitration. In
conclusion, the Hospital posits that, given these changed
circumstances, the new complaints cannot conceivably be thought to
mimic the grievances that formed the basis for the Stutz Award.

The district court resolved the MNA's enforcement action
on a Rule 12(c) motion. The guidelines applicable to judgment on
the pleadings require the court to accept all the well-pleaded
facts as true, draw all reasonable inferences in favor of the
nonmovant (here, the MNA), and grant the motion only if it appears
that the nonmovant could prove no set of facts that would entitle
it to relief. See <u>Rivera-Gomez</u> v. <u>de Castro</u>, 843 F.2d 631, 635
(1st Cir. 1988). As the CBA, the Stutz Award, and four of the new
incident reports were annexed to the pleadings,[3] so the court could
consider them in conducting its tamisage. See <u>Centro Medico del</u>
<u>Turabo, Inc.</u>, v. <u>Feliciano de Melecio</u>, 406 F.3d 1, 5 (1st Cir.

---

[3]While the remaining reports were not so annexed, the parties
have made persistent references to them during the course of this
appeal.

2005); <u>In re Colonial Mortg. Bankers Corp.</u>, 324 F.3d 12, 15 (1st Cir. 2003).

In hewing to this protocol, the district court chose to look beyond the isthmian confines of the remedial order to the body of the arbitrator's decision and the facts contained therein. In the end, it concluded that material factual differences marked the two disputes. Accordingly, it granted the Hospital's motion for judgment on the pleadings.

We review the district court's entry of judgment on the pleadings de novo, subject to the same ground rules that were applicable in the lower court. <u>See</u> <u>Gulf Coast Bank & Trust Co.</u> v. <u>Reder</u>, 355 F.3d 35, 37 (1st Cir. 2004); <u>Feliciano</u> v. <u>Rhode Island</u>, 160 F.3d 780, 788 (1st Cir. 1998). Even when scrutinized through the prism of this plaintiff-friendly standard of review, the MNA's argument falters.

To be sure, the MNA fulfills the first prong of the <u>Derwin</u> test: the Stutz Award plainly satisfies <u>Derwin</u>'s requirement that the original award be prospective. Indeed, the very nature of cease-and-desist orders is to provide prospective relief. <u>See</u> <u>P.R. Mar. Shipping Auth.</u> v. <u>Fed. Mar. Comm'n</u>, 75 F.3d 63, 65 (1st Cir. 1996).

The MNA does less well with <u>Derwin</u>'s second prong. On its side of the decisional scales is the fact that here, unlike in <u>Derwin</u>, the complaint alleges specific new violations and does not

-10-

ask us to place our imprimatur upon the earlier arbitral award in a vacuum. Yet the allegations of the complaint do not show, as Derwin demands, that it is "beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration." Derwin, 719 F.2d at 491 (citing Boston Shipping, 659 F.2d at 4).

The Stutz Award is annexed to and therefore incorporated by reference in the complaint. Accordingly, the district court had the obligation to go behind the bare bones of the remedial order and look at the whole of the Stutz Award. See Boston Shipping, 659 F.2d at 4 (relying upon supporting rationale of arbitrator in affirming enforcement of award). Taking into account the tenor of the arbitrator's decision and the available descriptions of the various incidents (new and old), it is perfectly plain that, even if all of the new disputes had taken place on Three North — and the bulk of them did not — that spatial coincidence, standing alone, would be insufficient to show the requisite similitude. The additional fact that all the complaints invoked Article 18.07 of the CBA does not suffice to remedy this shortcoming.[4] On these facts, the intervening passage of time and the changed nature of hospital staffing patterns and practices combine to form an

---

[4]It appears that at least one of the new complaints may not implicate Article 18.07 at all. For our purposes, nothing turns on this fact; accordingly we assume, favorably to the MNA, that all the new complaints implicate Article 18.07.

-11-

insurmountable barrier to the applicability of the earlier award. We explain briefly.

The MNA's complaint makes no meaningful effort to show the requisite similitude beyond the fact that several of the incidents transpired on Three North and came under the aegis of Article 18.07. Its argument does not fairly suggest identicality: as the Stutz Award and the incident reports reflect, staffing at the Hospital — like hospital staffing generally — is not a matter of simple arithmetic. To the contrary, it requires a sophisticated algorithm with many variables.

The nature of this complex endeavor is such that reasonable minds may differ as to the most salutary ratios in particular circumstances. See generally Julie Marie Bessette, An Analysis in Support of Minimum Nurse-to-Patient Ratios in Massachusetts, 9 Quinnipiac Health L.J. 173, 207 (2006) (noting the view that staffing involves "much more than arbitrary numbers, including judgment and critical thinking by nurse administrators and consideration of the patient's needs"). As documented in the Stutz Award, staffing at the Hospital involves variables such as patient acuity and nurses' skill sets. Common sense suggests that a host of other variables (say, case mix, volume, availability of para-professional aides, overtime policies) will influence nurse-staffing needs. See generally Kyndaron Reinier et al., Measuring the Nursing Workforce, 62 Med. Care Res. & Rev. 741, 743 (2005)

-12-

(listing numerous "hospital-level factors" that affect the need for nurses). In such a dynamic environment, it is surpassingly difficult to imagine a situation in which no material factual differences would exist between staffing inadequacies arising in 2002 and kindred incidents occurring nearly three years later.

The proof of the pudding can be found in the text of the Stutz Award. There, the arbitrator — conscious of the time lag between the occurrence of the underlying incidents and the date of decision — acknowledged that the violations he had found might not be ongoing. He noted that, even then, the Hospital had begun addressing staffing concerns by raising patient care hours, adding nursing hours on Three North, and instituting a formal system for assessing patient acuity. These particular systemic changes, along with the ordinary changes in personnel and patient mix that inevitably occur over time in any acute-care hospital, present a more than colorable basis for concluding that the original award, issued to remedy conditions existing in a particular area of the Hospital three years earlier, rested on a factual predicate that is (or, at least, may be) materially different from the factual predicate underlying the MNA's latest litany of complaints.

## III.

### Conclusion

We need go no further. The upshot is that the district court did not err in refusing woodenly to apply and enforce the

-13-

prior arbitral award to the MNA's subsequent misgivings with the Hospital.

**<u>Affirmed</u>**.