# United States Court of Appeals
## For the First Circuit

No. 18-2127

MARCO MARTINEZ,

Plaintiff, Appellant,

v.

SUN LIFE ASSURANCE COMPANY OF CANADA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Torruella, Lipez, and Kayatta,
Circuit Judges.

R. Joseph Barton, with whom Colin M. Downes and Block &
Leviton LLP were on brief, for appellant.
Mark Schmidtke, with whom Diane M. Saunders, David L.
Schenberg, and Ogletree, Deakins, Nash, Smoak & Stewart, P.C. were
on brief, for appellee.

January 27, 2020

**LIPEZ**, **Circuit Judge**.    Appellant Marco Martinez challenges the decision by Sun Life Assurance Company of Canada ("Sun Life") to offset his benefits under its employer-sponsored long-term disability insurance policy ("the Plan") by the amount of his service-connected disability compensation ("Veterans' Benefits").    The district court found that Sun Life properly interpreted the language of the Plan to permit the offset and entered judgment for Sun Life on all counts.

Martinez argues that the district court erred in two primary ways:  by concluding as a matter of law that Veterans' Benefits unambiguously qualify as a form of "Other Income Benefit" covered by the Plan's offset provision, and by rejecting as a matter of law that Sun Life's offset determination was motivated, at least in part, by his military service in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

After careful review of the facts and law, we affirm.

**I.**

## A.  Factual Background

The relevant facts are undisputed by the parties. Martinez is a disabled veteran who suffers from multiple sclerosis. He was honorably discharged from the United States Army in 1992. In September 2010, Martinez began work for the Athens Group and later became a participant in its employee welfare benefit plan,

which included long-term disability benefits provided pursuant to an insurance policy issued by Sun Life and governed by the Employee Retirement Income Security Act of 1974 ("ERISA").   In November 2012, when his health deteriorated, Martinez submitted a claim to Sun Life for long-term disability benefits.   Sun Life approved his claim.   Under the Plan, Martinez was entitled to monthly benefit payments calculated at sixty percent of his total monthly earnings, less any "Other Income Benefits."   "Other Income Benefits," as defined by the Plan, include the following:

> Other Income Benefits are those benefits provided or available to the Employee while a Long Term Disability Benefit is payable. These Other Income Benefits, other than retirement benefits, must be provided as a result of the same Total or Partial Disability payable under this Policy.   Other Income Benefits include:
>
> 1.   The amount the Employee is eligible for under:
>        a.   Workers' Compensation Law; or
>        b.   Occupational Disease Law; or
>        c.   Unemployment Compensation Law; or
>        d.   Compulsory Benefit Act or Law; or
>        e.   any automobile no-fault insurance plan; or
>        f.   any other act or law of like intent.
>
>    . . .
>
> 6.   The disability or retirement benefits under the United States Social Security Act, or any similar plan or act, as follows:
>        a.   Disability benefits the Employee is eligible to receive.

After Martinez had been receiving long-term disability benefits under the Plan for nearly a year, he submitted a claim in November 2013 to the United States Department of Veterans' Affairs ("the VA") for service-connected disability compensation pursuant to the Veterans' Benefits Act, 38 U.S.C. § 1110. The VA awarded Martinez Veterans' Benefits in January 2015, retroactive to July 19, 2013, based on a number of health conditions caused or aggravated by his military service, including multiple sclerosis. Martinez promptly notified Sun Life that his claim for Veterans' Benefits had been granted. By letter dated March 25, 2015, Sun Life informed Martinez that his Veterans' Benefits were considered "Other Income Benefits" subject to offset under the Plan and, as a result, his monthly Plan benefits would be decreased from $2,500 to $465. Sun Life also sought reimbursement of $32,560 for past overpayments. In describing Martinez's Veterans' Benefits as "Other Income Benefits," the letter excerpted the entire "Other Income Benefits" section of the Plan[1] without further specifying which provision authorized the offset. The letter also notified Martinez of his right to appeal Sun Life's decision.

Martinez responded by asking Sun Life for clarification of which "Other Income Benefits" provision it relied upon for its decision. Sun Life referred Martinez to Sections 1.f and 6 of the

---

[1] We provide the complete "Other Income Benefits" section of the Plan as an Appendix to this opinion.

- 4 -

Plan, quoting both Section 1 and Section 6 in full. Sun Life's letter bolded the language "any other act or law of like intent" in subsection 1.f and "or any similar plan or act" in Section 6. Martinez then submitted a formal appeal of Sun Life's decision, asserting various reasons for the exclusion of Veterans' Benefits as "Other Income Benefits" under the Plan, including that such benefits are not "compulsory" under Section 1.d.

In its letter denying Martinez's appeal, Sun Life again quoted the entire "Other Income Benefits" section of the Plan and stated:

> Other Income Benefits are defined by the policy, as noted above. Specifically, Veteran Benefits would be considered disability or retirement benefits under the United States Social Security Act, or any similar plan or act or any other act or law of like intent. You are receiving Veteran Benefits due to a service connection for multiple sclerosis with the loss of use of both feet. You are receiving Long Term Disability benefits because of your multiple sclerosis diagnosis. Because you are being paid Veteran Benefits, as a result of your disability, the Veteran Benefits are considered Other Income.

The letter cited a number of federal cases supporting its decision, including Holbrooks v. Sun Life Assurance Co. of Canada, 570 F. App'x 831 (10th Cir. 2014), which held that service-connected disability benefits are awarded under a "Compulsory Benefit Act or Law" pursuant to the same policy language as set forth in the Plan.

- 5 -

See id. at 835. After receiving Sun Life's letter denying his appeal, Martinez filed the instant action.

## B. Procedural History

Martinez's complaint asserts seven counts: Count I alleges discrimination based on service in the military in violation of USERRA, 38 U.S.C. § 4311; Count II seeks benefits pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B); Count III alleges that Sun Life breached its fiduciary duty in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B), and (D); Count IV alleges co-fiduciary liability in violation of ERISA, 29 U.S.C. § 1105(a); Count V alleges violation of the Veterans' Benefits Act, 38 U.S.C. § 5301(a); Count VI seeks declaratory and injunctive relief under ERISA, 29 U.S.C. § 1132(a)(3), and 28 U.S.C. §§ 2201-02; and Count VII alleges knowing participation in a fiduciary breach by a non-fiduciary in violation of ERISA, 29 U.S.C. § 1132(a)(3). Sun Life filed a motion to dismiss, see Fed. R. Civ. P. 12(b)(6), which the district court denied without prejudice, instructing the parties to compile and file the administrative record regarding Martinez's ERISA benefit claim (Count II). After Sun Life submitted its complete claim file and applicable policy documents, Martinez moved for discovery on Count II. The district court denied the motion, stating that Martinez had not "overcome the strong presumption against discovery" in ERISA cases.

Sun Life then filed a motion for summary judgment on Count II, arguing that Martinez's Veterans' Benefits are "Other Income Benefits" and thus subject to offset as a matter of law because he receives them pursuant to a "Compulsory Benefit Act or Law" and "an act or law of like intent" to Workers' Compensation Law, both of which it contended are unambiguous terms within the Plan. In granting the motion, the district court held that the term "Compulsory Benefit Act or Law" unambiguously includes Veterans' Benefits like those awarded to Martinez. The court did not address the additional argument that Martinez's Veterans' Benefits also are awarded under "an act or law of like intent" to Workers' Compensation Law.

The district court then ordered the parties to file a joint report proposing a plan for resolving the remaining issues in the case. The parties proposed treating Sun Life's previously filed motion to dismiss as a motion for judgment on the pleadings. After briefing on the motion was complete, the court granted judgment for Sun Life on all remaining counts. The court held that Sun Life did not violate USERRA because Martinez's military status was not a motivating or substantial factor in the application of the "Other Income Benefits" provision of the Plan. The court found that "the plain language of the Plan does not distinguish between service members and non-service members;" rather, the Plan uniformly permits Sun Life to offset benefits

- 7 -

received from third parties for the same disability, including Social Security disability benefits, which Martinez was also receiving and which had also been deducted from his Plan benefits. The district court also found that its prior ruling on Count II, concluding that Martinez's Veterans' Benefits were plainly included in the "Compulsory Benefit Act or Law" section of the Plan, compelled the conclusion that Sun Life did not breach any duties under ERISA as a fiduciary (Count III), a co-fiduciary (Count IV), or a non-fiduciary (Count VII) when it determined that Martinez's Veterans' Benefits were "Other Income Benefits" subject to offset.[2] This appeal followed.

## II.

We begin with Martinez's ERISA claims, first addressing his appeal of the district court's summary judgment for Sun Life on Count II and then its dismissal of the other ERISA counts.

### A. Standards of Review

We review both a grant of summary judgment and a dismissal based on the pleadings de novo. Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 87 (1st Cir. 2008) (summary judgment); Mass. Nurses Ass'n v. N. Adams Reg'l Hosp., 467 F.3d 27, 31 (1st Cir. 2006) (judgment on the pleadings). Because Sun Life has not identified any language in the Plan granting it discretionary

---

[2] The district court also entered judgment on the pleadings for Sun Life on Counts V and VI, which Martinez did not appeal.

authority to construe the terms of the Plan, we also review Sun Life's ERISA benefits determination de novo.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Where, as here, that determination was based solely on the construction of ERISA contract language, we may affirm the grant of summary judgment "only if the meaning of the language is clear" and "there is no genuine issue as to the inferences which might reasonably be drawn from the language."  Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 586 (1st Cir. 1993).

In reviewing a judgment on the pleadings, we accept the non-movant's well-pleaded facts as true and draw all reasonable inferences in the non-movant's favor.  Mass. Nurses Ass'n, 467 F.3d at 31.  We will affirm a judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006).

## B.  ERISA Benefits Claim

Martinez asserts that summary judgment was improper on Count II based on the "Compulsory Benefit Act or Law" category of "Other Benefits."  He argues that the district court erred by concluding that Sun Life provided adequate notice of its reliance on the "Compulsory Benefit Act or Law" provision to justify its offset of his Veterans' Benefits, and by finding that the phrase

"Compulsory Benefit Act or Law" unambiguously covers Veterans' Benefits. We address these contentions in turn.

### 1. Compliance with ERISA Notice Requirement

Our initial task is to determine whether Sun Life's alleged failure to clearly disclose in its letters to Martinez that it relied upon the "Compulsory Benefit Act or Law" provision for the offset now precludes it from relying on this rationale in litigation. This argument is premised on ERISA's statutory notice provision, which requires that an insurer "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1).

Sun Life's communications to Martinez complied with this mandate. Although Sun Life at times highlighted other rationales for the offset, it indicated to Martinez on multiple occasions that it intended to rely on the "Compulsory Benefit Act or Law" provision. The provision was included, albeit not emphasized, in Sun Life's letter in response to Martinez's request for clarification as to Sun Life's rationale for the offset. Likewise, Sun Life's final letter denying Martinez's appeal included a lengthy discussion of the Tenth Circuit's Holbrooks decision, which relied on the "Compulsory Benefit Act or Law" provision to uphold an offset based on a receipt of Veterans' Benefits. Indeed,

Martinez clearly understood that the "Compulsory Benefit Act or Law" provision was pertinent because he addressed the alleged non-compulsory nature of Veterans' Benefits explicitly in his appeal letter.

Moreover, even if Sun Life had not adequately disclosed its rationale to Martinez, barring Sun Life from raising the "Compulsory Benefit Act or Law" provision now would not be the proper remedy in this case. See Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 130-31 (1st Cir. 2004) (explaining that under ERISA, courts have "an array of possible responses when the plan administrator relies in litigation on a reason not articulated to the claimant" and that "no single answer fits all cases"). We typically have only barred a plan from asserting defenses to coverage not articulated to the insured when the lack of notice resulted in prejudice to the insured. See Bard v. Bos. Shipping Ass'n, 471 F.3d 229, 241-45 (1st Cir. 2006) (barring the plan from relying on a rationale not clearly articulated to the insured because, if he had been on notice, he would have submitted different medical documentation); Glista, 378 F.3d at 132 (same). Given that this case is strictly one of contract interpretation -- a question of law -- and Martinez has had a full opportunity to present his arguments on the construction of the Plan's provisions, we could find no prejudice to Martinez even had Sun Life not

adequately advanced its present argument in its initial denial.[3]

Accordingly, we agree with the district court's decision to entertain Sun Life's arguments premised on the "Compulsory Benefit Act or Law" provision and will consider those arguments on appeal.

### 2. Meaning of "Compulsory Benefit Act or Law"

Next, we must determine whether the phrase "Compulsory Benefit Act or Law" is ambiguous. If so, pursuant to the doctrine of contra proferentem, the term must be construed in favor of Martinez, thus barring the offset of his Veterans' Benefits. See Troiano v. Aetna Life Ins. Co., 844 F.3d 35, 44 (1st Cir. 2016) (holding that ambiguous policy terms must be strictly construed against the insurer when its determination is subject to de novo review).

ERISA-regulated employee benefit plans are interpreted according to principles of federal common law. See, e.g.,

_____

[3] For similar reasons, we also reject Martinez's argument that the district court abused its discretion when it denied discovery on Count II before deciding Sun Life's motion for summary judgment. It is unclear how discovery would help elucidate the plain meaning of an unambiguous contract term. Martinez's reliance on Taylor v. Continental Group Change in Control Severance Pay Plan, 933 F.2d 1227 (3d Cir. 1991), is inapt. The Taylor court permitted discovery in a different procedural posture: after finding that a term in an ERISA-governed severance plan was ambiguous, it remanded the case, instructing the district court to consider interpretive statements, past practices, and other evidence bearing on the parties' understanding of the relevant term. See 933 F.2d at 1232-33. At the same time, the court noted that where a plan term is unambiguous, it may be interpreted as a matter of law, which is exactly what the district court did here. See id. at 1232.

Filiatrault v. Comverse Tech., Inc., 275 F.3d 131, 135 (1st Cir. 2001). Under federal common law, plan language should be accorded its plain and ordinary meaning based on "commonsense principles of contract interpretation." Id. Courts may refer to dictionaries to help elucidate the common understanding of terms, although dictionary definitions are not controlling. See Littlefield v. Acadia Ins. Co., 392 F.3d 1, 8 (1st Cir. 2004).

ERISA contract language is ambiguous only "if the terms are inconsistent on their face" or "allow reasonable but differing interpretations of their meaning." Rodriguez-Abreu, 986 F.2d at 586. The principle of reasonableness is central to our ambiguity analysis -- courts are not permitted to "torture language in an attempt to force particular results or convey . . . nuances the contracting parties neither intended nor imagined." Burnham v. Guardian Life Ins. Co. of Am., 873 F.2d 486, 489 (1st Cir. 1989).

Applying these principles, we agree with both the district court and the Tenth Circuit in Holbrooks that "[t]here is nothing ambiguous about the term 'Compulsory Benefit Act or Law.'" Holbrooks, 570 F. App'x at 835; see also Martinez v. Sun Life Assurance Co. of Canada, No. 16-CV-12154-LTS, 2018 WL 2163641, at *3 (D. Mass. Feb. 14, 2018). The ordinary meaning of "compulsory" is "required by a law or rule" or "having the power of forcing someone to do something." See, e.g., Compulsory, Merriam-Webster's Dictionary Online, https://www.merriam-

- 13 -

webster.com/dictionary/compulsory (last visited Jan. 23, 2020). Accordingly, a "Compulsory Benefit Act or Law" is an act or law that requires benefits to be paid to any applicant who meets its qualifying criteria.

Because the VA was required by law to provide Veterans' Benefits to Martinez once it determined his eligibility, his Veterans' Benefits are clearly "compulsory." Accord Holbrooks, 570 F. App'x at 835. The statute governing basic entitlement to service-connected disability compensation states that "[f]or disability resulting from personal injury suffered or disease contracted in line of duty . . . the United States will pay to any veteran thus disabled . . . compensation as provided in this subchapter." 38 U.S.C. § 1110 (emphasis added). There is no room for discretion in this mandate. For this reason, some of our sister circuits have referred to Veterans' Benefits as "obligatory compensation for injuries to service men and women during military duty," Riley v. Sun Life & Health Ins. Co., 657 F.3d 739, 742 (8th Cir. 2011), and "nondiscretionary, statutorily mandated benefits," Cushman v. Shinseki, 576 F.3d 1290, 1298 (Fed. Cir. 2009). See also Hannington v. Sun Life & Health Ins. Co., 711 F.3d 226, 234 (1st Cir. 2013) (stating that Veterans' Benefits are based solely on "diseases and injuries incurred by service personnel on account of their military service").

Ignoring this logic, Martinez asserts that a reasonable alternative interpretation of "Compulsory Benefit Act or Law" is a law that requires a third party, not the government, to pay benefits. Citing two Supreme Court cases that have used the word "compulsory" to refer to programs of this nature,[4] he contends that the "normal use of the word compulsory suggests a third-party is compelled, not that one compels oneself to do something." He also emphasizes that the other benefits programs listed in subsection 1 -- workers' compensation, occupational disease compensation, and unemployment compensation -- all involve this so-called third-party form of compulsion.[5]

There are multiple flaws in this argument. First, although the Supreme Court has called certain statutes requiring workers' compensation and minimum standards of healthcare coverage "compulsory," the Court has never suggested that only those programs qualify as compulsory.

---

[4] See Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 735 (1985); N.Y. Cent. R. Co. v. White, 243 U.S. 188, 195 (1917).

[5] In fact, workers' compensation law, occupational disease law, and unemployment compensation law do not all fit the same model of third-party coercion. For example, workers' compensation laws compel employers to buy insurance to compensate employees for work-related injuries. However, unemployment compensation laws compel employers to make financial contributions to a government-created fund, which is ultimately paid out to unemployed individuals by the state. See generally 20 C.F.R. §§ 601-604.6.

Second, there is nothing in the text of the Plan to suggest that a "Compulsory Benefit Act or Law" must be similar in form to the third-party model of benefits programs enumerated therein. Other subsections of the Plan do include a "similarity" requirement -- for example, subsection 6 allows for offset of "disability or retirement benefits under the United States Social Security Act, or any similar plan or act." However, the "Compulsory Benefit Act or Law" provision stands alone without any language to link the term to the other programs included in the same subsection.[6]

Third, by focusing on the form of the specific benefits plans identified -- i.e., the particular entity that is compelled to pay benefits to qualified individuals -- Martinez elevates form over substance. No reasonable reader of the Plan would look at the term "Compulsory Benefit Act or Law" and ponder over what specific type of entity is being compelled. The essence of a

---

[6] Thus, contrary to Martinez's assertion, our decision in Hannington that Veterans' Benefits are not "similar to" Social Security or Railroad Retirement Act benefits, and hence cannot offset disability benefits payable under a Sun Life long-term disability plan, does not control the outcome of this case. See Hannington, 711 F.3d at 234. Although the plan in Hannington did contain a provision allowing for offset of "disability benefits under any compulsory benefit act or law," the insurer did not rely on that provision for its offset of the plan participant's service-connected disability benefits. Id. at 228-29, 235. As such, we had no occasion to opine on the application of that provision to Veterans' Benefits. See Glista, 378 F.3d at 128 (explaining that judicial review is limited to the asserted basis for the insurer's decision).

compulsory benefit law is that some entity -- be it an employer, an insurance company, or a government agency -- is required by law to pay the benefit to all qualified applicants.

We also reject Martinez's contention that "Compulsory Benefit Act or Law" must be defined in a way that it does not render superfluous the listing of workers' compensation law, occupational disease law, and unemployment compensation law in provisions "a" through "c" of subsection 1 of the Plan. See Vendura v. Boxer, 845 F.3d 477, 486 (1st Cir. 2017) (noting the "longstanding principle against reading plan terms to be superfluous"). The rule against superfluities, as a matter of statutory interpretation, is not unwavering -- we apply it only if the resulting construction is "rationally possible." See New Eng. Carpenters Cent. Collection Agency v. Labonte Drywall Co., 795 F.3d 271, 282 (1st Cir. 2015). Martinez's urged construction is irrational because it would mean that Sun Life cannot use a generic description that covers the full range of compulsory benefit programs contemplated by the Plan if that generic description also encompasses certain programs that are specifically enumerated in the Plan. The insurer cannot anticipate every type of program that might justify an offset. It can supplement the itemization of programs with generic descriptions whose plain meaning will be understood by the average plan participant.

Finally, contrary to Martinez's argument, the fact that the entire term, "Compulsory Benefit Act or Law," is capitalized but not explicitly defined in the Plan's definitions section does not render it ambiguous.[7]  Though the parties dispute the reach of "Compulsory Benefit Act or Law," both agree that it is an umbrella category and does not refer to only one specific act or law.  The phrase also appears in a list of both capitalized and uncapitalized terms, many of which are also undefined but connote a plain meaning.  Where the only contested word in the phrase -- "compulsory" -- has a plain and unambiguous meaning, we cannot find the provision ambiguous simply because it is capitalized but undefined.

We thus conclude that the only reasonable interpretation of "Compulsory Benefit Act or Law" is a law that requires benefits be paid to any applicant who meets its qualifying criteria.  Martinez's Veterans' Benefits fall squarely within this definition.[8]

---

[7] The cases cited by Martinez, Scottsdale Insurance Co. v. Torres, 561 F.3d 74 (1st Cir. 2009) and O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc., 37 F.3d 55 (2d Cir. 1994), create no such per se rule.

[8] Hence, like the district court, we need not consider Sun Life's alternative argument that Veterans' Benefits also constitute an "act or law of like intent" to "Workers' Compensation Law."  This argument is premised on subsections 1.a and 1.f of the "Other Income Benefits" provision of the Plan.  Specifically, section 1.f allows for the offset of benefits awarded under "any other act or law of like intent" to the previously enumerated laws, which include "Workers' Compensation Law" in subsection 1.a.  Thus,

- 18 -

## C. ERISA Breach Claims

Martinez also argues that the district court erred in dismissing Counts III, IV, and VII, which allege that Sun Life breached a fiduciary duty or participated in a fiduciary breach by construing the Plan to require offset of his Veterans' Benefits and failing to disclose that Veterans' Benefits constitute "Other Income Benefits." Martinez's claim for direct breach of fiduciary duty (Count III) is based on the Plan itself, while the claims for co-fiduciary (Count IV) or non-fiduciary liability (Count VII) are premised on the language of the Summary Plan Description ("SPD"), drafted by Sun Life and delivered by Martinez's employer and Plan sponsor, the Athens Group.[9] Finding that all three claims could succeed only if Martinez's Veterans' Benefits were not properly considered "Other Income Benefits" or not clearly disclosed as such, the district court disposed of them in light of its earlier ruling that the Plan unambiguously provides for offset of Veterans' Benefits.

---

if Veterans' Benefits were awarded pursuant to a law of like intent to workers' compensation law, Sun Life would, for that reason as well, be entitled to subtract them from Martinez's ERISA disability payment as "Other Income Benefits."

[9] Thus, any primary fiduciary liability for Counts IV or VII would lie with the Athens Group, and Sun Life could only be liable as a co-fiduciary (Count IV) or a non-fiduciary who knowingly participated in a fiduciary breach (Count VII).

We agree that the fiduciary claims necessarily fail with the determination that "Compulsory Benefit Act or Law" unambiguously covers Veterans' Benefits. Properly construing and following the terms of the Plan does not constitute a breach of fiduciary duty.[10]

Nor does the language of the SPD provide any basis for a claim that the Athens Group breached a fiduciary duty, such that Sun Life could be liable for participating in that breach as a co-fiduciary or a non-fiduciary. Given that the SPD contained an identical definition of "Other Income Benefits" as the Plan, our conclusion that the Plan language was unambiguous means that we must also conclude that the SPD was "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a); see id. (further stating that a summary plan description "shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan").

---

[10] For similar reasons, we also reject the argument that Sun Life had a fiduciary obligation to affirmatively advise Martinez that Veterans' Benefits were subject to offset under the Plan as soon as it learned that Martinez was a veteran. The fiduciary duty to convey unrequested material information to beneficiaries "only arises if there was some particular reason that the fiduciary should have known that his failure to convey the information would be harmful." Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 114-15 (1st Cir. 2002). In this case, there could be no anticipated harm, given the Plan's unambiguous inclusion of Veterans' Benefits within the term "Compulsory Benefit Act or Law."

In so concluding, we reject Martinez's assertion that the question of whether the SPD's terms are capable of being understood by an "average plan participant" is a question of fact not appropriately decided on a motion for judgment on the pleadings. Our holding that the phrase "Compulsory Benefit Act or Law" unambiguously applies to Veterans' Benefits forecloses the argument that an "average plan participant" would not understand its meaning. Put differently, our determination that the phrase's meaning is unambiguous rests on the judgment that an "average plan participant" would read the provision as we do. See, e.g., Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 278 (1st Cir. 2000) (concluding, in effect, that an "unambiguous" plan provision reasonably apprises the average plan participant of the plan's relevant terms).

## III.

Martinez claims that Sun Life's offset of Veterans' Benefits discriminates against employees who have served in the uniformed services in violation of USERRA, 38 U.S.C. § 4311. In entering judgment for Sun Life on the USERRA claim, the district court held that Martinez had not adequately pleaded that his military status was "at least a motivating or substantial factor" in Sun Life's decision to offset his Veterans' Benefits. See Velázquez-García v. Horizon Lines of P.R., Inc., 473 F.3d 11, 17 (1st Cir. 2007). On appeal, Martinez argues that the district

court misapplied both the standard of review under Federal Rule of Civil Procedure 12(c) and the substantive standard for violation of USERRA.  Because both arguments turn on our conclusion that the phrase "Compulsory Benefit Act or Law" is unambiguous as a matter of law, we address them together.

**A.   USERRA Framework**

By its terms, § 4311 protects any member of the uniformed services from being denied "any benefit of employment by an employer on the basis of that membership."  38 U.S.C. § 4311(a).  Specifically, the relevant portion of the statute provides that:

> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
>
> . . .
>
> (c) An employer shall be considered to have engaged in actions prohibited--
> (1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

- 22 -

Id. § 4311.  Thus, for a claim of discrimination under USERRA to survive a motion for judgment on the pleadings, an employee must plausibly allege that military status was "a motivating factor" in the adverse action taken by the employer.  See id.; Velázquez-García, 473 F.3d at 17.  At later stages of the litigation, i.e., on a motion for summary judgment or at trial, if the plaintiff introduces evidence to substantiate his or her plausible allegations of discrimination, the burden then shifts to the employer to "prove, by a preponderance of the evidence, that the action would have been taken despite the protected status." Velázquez-García, 473 F.3d at 17 (quoting Sheehan v. Dep't of Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001)).

## B.  Application of USERRA

Martinez did not meet his initial pleading burden because his discrimination allegation is implausible as a matter of law.[11]  The simple fact that his Plan benefits were reduced by the amount of his Veterans' Benefits does not mean that Sun Life

---

[11] In reaching this conclusion, the district court did not improperly credit Sun Life's assertion that its interpretation of the Plan was based on the policy's plain language instead of crediting Martinez's assertion that the interpretation was an act of discrimination under USERRA.  Rather than crediting any assertions by Sun Life, the court relied on its previous holding that, as a matter of law, the language "Compulsory Benefit Act or Law" unambiguously covers service-connected disability compensation.  This conclusion required no resolution of disputed facts; it was a legal conclusion based on the court's interpretation of the Plan's unambiguous language.  See supra Section II.B.

was motivated, at least in part, by his status as a servicemember to make that reduction. By this logic, any insurance plan that permits benefits to be offset by service-connected disability benefits, whether it explicitly lists them as subject to offset or includes them in a generic term like "Compulsory Benefit Act or Law," is a per se violation of USERRA. This approach would render Veterans' Benefits practically untouchable by insurers like Sun Life, allowing veteran recipients to double-collect disability benefits for the same underlying condition, even where such collection is barred for recipients of other forms of disability benefits. Hence, Martinez's interpretation runs afoul of the statutory purpose of § 4311, which is to root out unlawful discrimination on the basis of uniformed service, not provide preferential treatment to servicemembers. See H.R. Rep. No. 103–65(I), at 23 (1993), as reprinted in 1994 U.S.C.C.A.N. 2449, 2456 (stating that § 4311(a) is designed to "reenact the current prohibition against discrimination"); Crews v. City of Mt. Vernon, 567 F.3d 860, 862, 866 (7th Cir. 2009) (holding that a city's decision to stop providing a work schedule benefit to employees in the National Guard, which it had never provided to non-Guard employees, did not violate § 4311 because "USERRA does not require such preferential treatment"); Rogers v. City of San Antonio, 392 F.3d 758, 768 (5th Cir. 2004) (finding "no intention" in § 4311(a) "to prohibit neutral labor contracts from treating employees on

military leave equally with those on non-military leave with respect to the loss of benefits due to absence from work").

Thus, the fundamental problem with Martinez's USERRA claim is that he does not allege any facts suggesting that Sun Life was motivated to apply the "Other Benefits" provision to him because he was receiving military-related benefits.[12] Indeed, Martinez even concedes that Sun Life also offset his Social Security disability benefits because, like his Veterans' Benefits, they were awarded for the same disability for which he received Plan benefits. The only role that Martinez's military status allegedly played in Sun Life's decision to offset his Plan benefits is that the source of his "Other Income Benefit[]" was the VA. That fact alone is not enough to plausibly allege a violation of USERRA.[13] Accordingly, we hold that the district court properly

_____

[12] In this respect, the cases cited by Martinez are all distinguishable, even though they found USERRA violations based on facially neutral policies. See Erickson v. U.S. Postal Serv., 571 F.3d 1364, 1368 (Fed. Cir. 2009) (employee fired based in part on his "excessive use of military leave"); Petty v. Metro. Gov't of Nashville-Davidson Cty., 538 F.3d 431, 447-48 (6th Cir. 2008) (employee investigated because of concerns related to his military service); Velázquez-García, 473 F.3d at 17-19 & n.8 (employee subject to explicitly anti-military comments in the workplace).

[13] We also reject Martinez's argument that Sun Life's timing in notifying him that his Veterans' Benefits would be offset suggests a discriminatory motive. Sun Life was under no obligation to explain its Plan interpretation to Martinez before Martinez notified Sun Life that he had been awarded service-connected disability benefits. Where the phrase "Compulsory Benefit Act or Law" unambiguously covers those benefits, any earlier communication would have been duplicative of the Plan's plain language. Cf. Velázquez-García, 473 F.3d at 20-21 (finding that

granted judgment on the pleadings for Sun Life on Martinez's USERRA claim.[14]

       <u>Affirmed</u>.

_____

an employer's delay in informing a USERRA plaintiff that his check-cashing business violated the employer's code of conduct suggested that its reason for firing him was pretextual, in part because the code of conduct provision was ambiguous and did not clearly bar running a check-cashing business). <u>See</u> <u>also</u> <u>supra</u> note 10 (rejecting another version of this argument in a different context).

[14] Because we hold that Martinez failed to state a claim of USERRA discrimination, and thus affirm judgment on the pleadings for Sun Life, we do not reach Sun Life's alternative argument that it is not a proper defendant under USERRA, which defines an "employer" to include "a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4303(4)(A)(i). Rather, our analysis assumes without deciding that Sun Life is subject to suit under USERRA.

**Appendix**

**Other Income Benefits**

Other Income Benefits are those benefits provided or available to the Employee while a Long Term Disability Benefit is payable. These Other Income Benefits, other than retirement benefits, must be provided as a result of the same Total or Partial Disability payable under this Policy.  Other Income Benefits include:

1.   The amount the Employee is eligible for under:
     a.   Workers' Compensation Law; or
     b.   Occupational Disease Law; or
     c.   Unemployment Compensation Law; or
     d.   Compulsory Benefit Act or Law; or
     e.   an automobile no-fault insurance plan; or
     f.   any other act or law of like intent.

2.   The Railroad Retirement Act (including any dependent benefits).

3.   Any labor management trustee, union or employee benefit plans that are funded in whole or in part by the Employer.

4.   Any disability income benefits the Employee is eligible for under:
     a.   any other group insurance plan of the Employer;
     b.   any governmental retirement system as a result of the Employee's job with his Employer.

5.   The benefits the Employee receives under his Employer's Retirement Plan as follows:
     a.   any disability benefits;
     b.   the Employer-paid portion of any retirement benefits.
     (Disability benefits that reduce the Employee's accrued retirement benefit will be treated as a retirement benefit. Retirement benefits do not include any amount rolled over or transferred to any other retirement plan as defined in Section 402 of the Internal Revenue Code.)

6.   The disability or retirement benefits under the United States Social Security Act, or any similar plan or act, as follows:
     a.   Disability benefits the Employee is eligible to receive.
     b.   Disability benefits the Employee's spouse, child or children are eligible to receive because of the Employee's Total or Partial Disability unless the dependent benefits are paid directly to the divorced

spouse or to the children in custody of the divorced spouse.

c. Retirement benefits received by the Employee.

d. Retirement benefits the Employee's spouse, child or children receive because of the Employee's receipt because of the Employee's receipt of retirement benefits unless the dependent benefits are paid directly to the divorced spouse or to the children in custody of the divorced spouse.

If an Employee's Total or Partial Disability begins after Social Security Normal Retirement Age, Social Security Retirement Benefits will not be offset if, prior to his Total or Partial Disability, he was already receiving Social Security Retirement Benefits.

7. The amount the Employee receives from any accumulated sick leave.

8. Any salary continuation paid to the Employee by his Employer which causes the Net Monthly Benefit, plus Other Income Benefits and any salary continuation to exceed 100% of the Employee's Total Monthly Earnings. The amount in excess of 100% of the Employee's Total Monthly Earnings will be used to reduce the Net Monthly Benefit.

9. Any amount due to income replacement or lost wages the Employee receives by compromise, settlement or other method as a result of a claim for any Other Income Benefit.

10. Any amount the Employee receives from a voluntary separation of employment agreement from the Employer including severance pay or any other income in settlement of an employment contract.

Other Income Benefits will include any amount described above which would have been available to the Employee had he applied for that benefit.