# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-3237

_____

Jordan To,

               Appellant,

v.

US Bancorp, doing business as US
Bank; U.S. Bank National Association,

               Appellees.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of Minnesota.
\*
\*
\*
\*

_____

Submitted: June 14, 2011
Filed: August 25, 2011

_____

Before LOKEN, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Jordan To appeals the district court's[1] grant of summary judgment in favor of his former employer, appellee U.S. Bank, in this wrongful-termination suit brought pursuant to the Uniformed Services Employment and Reemployment Rights Act (USERRA). We affirm.

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

## I.    BACKGROUND

From March 2007 to August 2008, To worked for U.S. Bank as a Senior Research Clerk.  In October 2007, To enlisted in the Minnesota National Guard.  In early 2008, he received orders to attend training in Fort Benning, Georgia.  The training began on April 20, 2008, and was initially scheduled to end July 10, 2008.  While stationed at Fort Benning, To suffered a groin injury and later became ill and severely fatigued.  He missed a significant amount of training due to this illness.  Because he missed so much training, To's orders were amended, extending his training period until August 1, 2008.  The record is undisputed that To did not contact anyone at U.S. Bank to inform them that he became ill during his military duty.

On July 29, To sent an email to Jill Friedges, who was To's direct supervisor at the time he left for training.  In the email, To said that he was still at training and that he was not sure when he would return to Minnesota.  He did not mention feeling ill.  Friedges, who had taken a new position within U.S. Bank, forwarded the email to human resource officials.  On Monday, August 4, To participated in a conference call with his manager, Jeff O'Neill and O'Neill's boss, Kristen Cornelius.  To stated that he was back from military leave and wished to return to work at U.S. Bank, but that he was not feeling well and needed time to recuperate.  According to To, O'Neill and Cornelius indicated To would need to provide a doctor's note if he was going to miss work.

From August 5 to August 8, 2008, To called O'Neill each day and left a voice mail stating that he was not feeling well and would not be reporting to work.  On August 6, To saw a doctor at Aspen Medical Group who tested To for pneumonia.  The test came back negative, but the doctor provided To with a return-to-work slip saying he would be absent until August 11.  At To's request, Aspen faxed a copy of this return-to-work slip to Daniel Truong, who had replaced Friedges as To's supervisor.

To did not report to work on Monday, August 11. Truong testified that To called in that morning, saying he was still ill and asking for a fax number where he could send an updated return-to-work slip. On the afternoon of August 11, Aspen faxed Truong a second return-to-work slip stating that To would be out of work until August 18.

On August 14, O'Neill called To, checking on his health and plans to return to work. To indicated that he still wasn't feeling back to normal, but that he was "getting better, trying to get better" and that he wished to return to work the next Monday, August 18. He said that U.S. Bank should not mail his paycheck, which would be cut on August 15, because he would be at work to pick it up the next week. To also said he would contact O'Neill if he was not better by the 18th.

To did not show up for work August 18, 19, or 20. He did not call any supervisor or manager at U.S. Bank to notify them that he would not be coming to work. To alleges that on August 15 he contacted Aspen and asked that a new return-to-work slip be faxed to U.S. Bank, excusing him from work the following week. U.S. Bank denies receiving a return-to-work slip covering the week of the 18th. During discovery, To did produce a return-to-work slip dated August 15. The document was addressed, in handwritten words, to "Daniel"–presumably Truong– and listed a correct fax number for U.S. Bank. Karen Kreich, Clinic Supervisor at Aspen, explained at her deposition that Aspen does not receive a confirmation when a fax goes through, but rather only gets failure notifications if a fax does not successfully transmit. Kreich said that certain markings on the August 15 return-to-work slip indicated that someone at Aspen had faxed the document on August 15 and that no failure notification had been received. However, Kreich had no personal knowledge about whether the fax had been sent.

Absences at U.S. Bank are governed by two policies published in the company handbook. The "Reporting Absences" policy states:

You are expected to report all absences yourself . . . as soon as practicable after you become aware of the need for the absence. You must speak directly to your manager or supervisor and follow all reporting procedures required by the department. You may not report an absence by leaving a voice mail, sending email, or telling your co-workers, unless your supervisor or manager specifically approves reporting absences in one of these manners. . . . Please note that contacting the U.S. Bank Employee Service Center or Human Resources does not satisfy the requirement to contact your supervisor directly to notify him or her that you will be absent, even if you are using or applying for . . . Family Medical Leave Act (FMLA) time.

The handbook also contains a "Job Abandonment" policy, which provides:

If you remain absent from work for two (2) consecutive work days and fail to report the absence directly to your manager or supervisor, absent extenuating circumstances, you may be assumed to have voluntarily abandoned your job. Contacting the U.S. Bank Employee Service Center or your Human Resources representative does not satisfy the requirement to contact your manager directly to notify him or her that you will be absent, even if you are using or applying for . . . FMLA time.

To received a copy of the handbook containing these policies at the time he was hired. The policies were also available on the company intranet, which To had access to while employed at U.S. Bank.

On August 20, U.S. Bank human resource officials determined that To had abandoned his job. The next day, U.S. Bank mailed a termination letter, which To received on August 22. After receiving the letter, To called to talk to Truong, who said he was not aware of To's termination. Truong recommended that To call O'Neill or Cornelius. To did not do so.

Later that week, To called human resources official Karen Dahlstrom to talk about his termination. Dahlstrom reiterated that To was terminated because he did not comply with U.S. Bank policies for reporting asbences. During the conversation, To referenced the August 15 return-to-work slip that he claimed had been sent to U.S. Bank. At her deposition, Dahlstrom gave uncontroverted[2] testimony that, during this phone call, she provided To with her fax number and said that, if he would send a copy of the August 15 return-to-work slip, U.S. Bank would "reevaluate his situation." Dahlstrom did not receive a copy of the August 15 return-to-work slip. However, on August 26, Aspen faxed over another return-to-work slip, saying that To would not be able to return to work until mid-September. U.S. Bank did not reevaluate To's situation in light of this note because it was dated after his termination date.

On November 13, 2008, To filed a suit in federal district court, bringing claims under the FMLA and USERRA. U.S. Bank moved for summary judgment. On September 7, 2010, the district court issued an order granting summary judgment. To appeals only the dismissal of his USERRA claim.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. Peterson v. Scott Cnty., 406 F.3d 515, 520 (8th Cir. 2005). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party has proved it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). For this purpose, a fact is "material" if it must inevitably be resolved and its resolution will determine the outcome of the case, and a factual issue is

---

[2] To testified only that he did not recall whether Dahlstrom made this request, and that if she had he would have sent it. An assertion that a party does not recall an event does not itself create a question of material fact about whether the event did, in fact, occur. See Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1057 (8th Cir. 2007).

"genuine" if evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

USERRA temporarily changes the at-will employment status of returning veterans depending on length of service. If, like To, an employee's military service was longer than thirty days but less than 181 days, the employee cannot be discharged except for "cause" within the first 180 days after reemployment. 38 U.S.C. § 4316(c)(2). USERRA does not define the term "cause," but it grants the Secretary of Labor authority to prescribe regulations implementing the statute, id. § 4331, which the Secretary has used to define cause. 20 C.F.R. § 1002.248(a). In order to prove the "cause" needed to discharge an employee covered by USERRA based on that employee's conduct, an employer must show: (1) that the employer's decision was reasonable, and (2) that the employee had notice that such conduct would be a ground for discharge. Id. § 1002.248(a); Hillman v. Arkansas Highway & Transp. Dep't, 39 F.3d 197, 200 (8th Cir. 1994). To has not raised a genuine factual dispute on either question.

## A.    Reasonableness

Although summary judgment is rare in USERRA termination cases because the burden of proving cause is on the defendant, it is appropriately granted when an employer's decision to terminate an employee is reasonable as a matter of law. See Rademacher v. HBE Corp., No. 10-1816, 2011 WL 2718147, at *6 (8th Cir. July 14, 2011); Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308-09 (4th Cir. 2006). A "reasonable" termination decision does not always need to be grounded in legal cause rising to the level of misconduct, and subjective bad faith on the part of the employee is not required. Hillman, 39 F.3d at 200 ("[A] greater element of subjective culpability appears to be required for a finding of 'misconduct' than that needed to find 'just cause' under the Act. We are inclined to agree with the district court that while misconduct would always constitute just cause, the converse is not necessarily true.").

-6-

Rather, a firing for "cause" need only be based on conduct such that it is "fair to discharge the veteran because of his conduct." Rademacher, 2011 WL 2718147, at *6 (quotation omitted). U.S. Bank's decision to fire To was reasonable as a matter of law because To violated a clear written company policy by failing to properly report his absences. U.S. Bank's Job Abandonment policy expressly states that an employee forfeits his job if he neither appears for work nor properly reports his absences for two days in row. U.S. Bank acted reasonably in enforcing these policies.

To argues that the district court erred by concluding To did not raise a genuine fact dispute about whether Aspen did fax a return-to-work slip to U.S. Bank on August 15, 2008. We do not need to determine whether To created a genuine fact dispute on this issue, because we conclude that–even if disputed–this question is not material to whether U.S. Bank acted reasonably by terminating To. Even assuming Aspen did fax a note to U.S. Bank on August 15, U.S. Bank still had just cause to fire To. U.S. Bank has consistently maintained that, regardless of whether To had a fax sent on August 15, he still did not comply with company policy, which required him to personally report his absence to a manager or supervisor.

In response, To argues that whether he sent the fax *is* material because U.S. Bank had effectively modified its written policies for To by previously accepting his faxed doctor's notes as an adequate way of reporting his absence. However, the record does not support this argument. U.S. Bank has presented uncontested evidence that, in addition to faxing doctor's notes, To called in to report absences for the weeks of August 4 and August 11. Although To argues there is a genuine dispute of fact about whether he called in to report his absence the week of August 11, we conclude there is not. U.S. Bank presented testimony from Truong that To called in on August 11 to report that he was not returning to work and to let Truong know he would be faxing a return-to-work slip. There is no testimony from To denying that this conversation took place. Rather, there is only a statement that he did not recall the conversation. To's lack of memory does not create a genuine factual dispute. See Elnashar, 484 F.3d

-7-

at 1057. Further, To presented no evidence that any official at U.S. Bank told To that faxing in a doctor's note was an adequate means of reporting an absence in his situation. His claim that O'Neill asked him to provide a doctor's note at the August 4 meeting does not suggest that O'Neill indicated that To *only* needed to provide a doctor's note. To's argument to the contrary is undermined by the fact that he did continue to call O'Neill to report his absences in the days after that conference call.

To also argues that whether the fax was sent must be material because, after To was terminated, U.S. Bank said it might be willing to reconsider its termination decision if To produced a copy of the return-to-work slip excusing To for the week of August 18. However, we find this argument unpersuasive. Under To's logic, U.S. Bank would forfeit its right to rely on written policies by being willing to occasionally forgive violation of those policies in the face of extenuating circumstances and equitable concerns. We decline to establish a rule that would penalize an employer–motivated by a sense of fairness or perhaps even mercy–for providing a contextual reevaluation of a termination decision that was, regardless of that context, clearly authorized by company policies. While an employer's decision to disregard a policy *before* an employee is terminated might–in some circumstances–cause that policy to be modified for that employee because of reasonable reliance on an employer's actions, an employer's willingness to reconsider a policy *after* an employee has been terminated has no similar effect. Nothing in the notion of "cause" requires such a rule. Rather, the fact that U.S. Bank gave To an additional opportunity to comply is further evidence that U.S. Bank acted reasonably. To apparently did not take advantage of this opportunity because he did not send in a copy of the correct return-to-work slip when Dahlstrom gave him that chance for reconsideration. The fact that Dahlstrom asked for the fax after To was terminated does not make whether the fax was sent on August 15 a material question.

Finally, the record contains no indication that U.S. Bank's decision to terminate To because of his violations of company policy was pretextual. To correctly points

out that establishing wrongful termination under USERRA does not require an employee to establish that he was fired for a discriminatory reason. Nonetheless, as the district court recognized, evidence of pretext may raise a question about whether an employer's proffered cause for firing an employee was reasonable. Hillman, 39 F.3d at 200. Here, there was no such evidence and we conclude that To has not raised a question of material fact about whether U.S. Bank's decision to fire him was reasonable.

### B. Notice

Similarly, To has failed to raise a question of material fact about whether he had notice that he was likely to be fired for his conduct. For USERRA purposes, notice can be either express or fairly implied. Id. U.S. Bank's decision to terminate To was based on two policies spelled out in advance and published in the company handbook. To received a copy of the U.S. Bank employee handbook, which was also available to him via the U.S. Bank intranet. The policies specifically state that the consequence for two consecutive, unreported absences is termination. To's knowledge of policies clearly outlined in the handbook is fairly implied. This is especially true where, for the first two weeks of his absence, To *did* directly report his absence to his supervisor.

To argues that he did not have adequate notice because U.S. Bank did not "forewarn" him that failure to report his absence directly to his supervisor the week of the 18th would result in his termination. However, "forewarning" is not required under USERRA, where the Secretary of Labor has made clear that notice to an employee may be adequate if it is "fairly implied." 20 C.F.R. § 1002.248(a).

## III. CONCLUSION

We affirm.

Judge Loken dissents.

———————————————————