[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13376

_____

AMY SANUSI,
SAMANTHA BANKS,

Plaintiffs-Appellants,

*versus*

GRADY MEMORIAL HOSPITAL CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-00627-ELR

_____

Before JORDAN, JILL PRYOR, and HULL, Circuit Judges.

HULL, Circuit Judge:

In this employment action, plaintiffs Samantha Banks and Amy Sanusi appeal the district court's order granting summary judgment in favor of their former employer, Grady Memorial Hospital ("Grady"), on their national origin discrimination and retaliation claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). After careful review, and with the benefit of oral argument, we affirm.

## I. BACKGROUND

### A. National Origin Discrimination and Retaliation

Plaintiffs Banks and Sanusi were nurses in Grady's Mother/Baby Unit ("the Unit"). Both Banks and Sanusi were supervised by Tabitha Johnson, a "Black American, African-American" woman born in Florida.[1]

Plaintiff Banks, a "Black American, African-American" woman born in Georgia, worked at Grady from March 2019 until she resigned on May 6, 2020. On April 30, 2020, Banks met with Johnson and Nicole Lescota, Johnson's supervisor, to discuss the complaints that had been made by other nurses in the Unit about Banks's performance. At this time, Banks served as a Clinical Staff Manager. After the meeting, Banks contacted two of those other

---

[1] Because this is a national origin discrimination case, we refer to the race and ethnicity of Johnson and the plaintiffs in the manner they stated them.

nurses in the Unit.  Johnson and Lescota subsequently issued Banks a written reprimand admonishing her for being insubordinate by contacting the two nurses.  Banks refused to sign the reprimand and resigned from her position at Grady.

Plaintiff Sanusi, a "Black" woman who was born in Sierra Leone, began working at Grady in February 2017 and was terminated on October 6, 2020.  In the fall of 2020, Sanusi served as a charge nurse.  After receiving two reports of Sanusi's substandard patient care, Johnson suspended Sanusi from work pending an investigation.   Johnson and Lescota ultimately decided to terminate Sanusi.

Plaintiffs Banks and Sanusi jointly filed this Title VII lawsuit.  Banks and Sanusi alleged that Johnson, as a "Black American, African-American" woman born in Florida, discriminated against nurses born in Africa or of African origin.  Banks and Sanusi recounted alleged statements by Johnson that expressly reflected discriminatory animus against persons born in Africa.  Banks and Sanusi complained about Johnson's national origin discrimination.  Banks and Sanusi alleged that Johnson then retaliated against them because of their complaints of national origin discrimination.

Specifically, in their lawsuit, plaintiff Banks asserted claims for retaliatory harassment and discipline and retaliatory constructive discharge.   Plaintiff Sanusi asserted claims for

4                    Opinion of the Court                    23-13376

discriminatory termination on the basis of national origin and retaliatory termination.[2]

## B. District Court's Order

Grady moved for summary judgment on both Banks's and Sanusi's claims. Both plaintiffs opposed summary judgment. Plaintiff Banks argued that her claims survived summary judgment under both the *McDonnell Douglas*[3] burden-shifting framework and the convincing mosaic standard. Plaintiff Sanusi argued that she survived summary judgment under the convincing mosaic theory and did not raise a *McDonnell Douglas* argument.

In a report and recommendation, a magistrate judge recommended that defendant Grady's motion for summary judgment be granted as to both plaintiffs' claims. After the plaintiffs objected, the district court adopted the magistrate judge's report and recommendation and granted summary judgment to defendant Grady.

Following the district court's entry of final judgment, plaintiffs Banks and Sanusi timely appealed.

## II. STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment, viewing all evidence and drawing all reasonable

---

[2] Plaintiff Sanusi also originally asserted a claim for retaliatory denial of promotion, but she then did not oppose summary judgment on that claim in her response to Grady's motion for summary judgment.

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

inferences in the light most favorable to the plaintiffs, as the non-moving parties. *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1300 (11th Cir. 2019). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III. DISCUSSION

### A. General Principles

To prove discrimination or retaliation under Title VII, a plaintiff can rely on direct evidence, circumstantial evidence, or both. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944–47 (11th Cir. 2023). Direct evidence, if believed, "proves the existence of a fact without inference or presumption." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (quotation marks and alterations omitted). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020) (quotation marks omitted).

Where a plaintiff, as here, relies primarily on circumstantial evidence to prove a Title VII claim, the plaintiff may use one of two methods, or both methods, to present their evidence and show that a reasonable jury could rule in her favor. *Tynes*, 88 F.4th at 946–47; *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310–11 (11th Cir. 2023).

Under the traditional *McDonnell Douglas* burden-shifting approach, the plaintiff bears an initial burden to make out a prima facie case of discrimination or retaliation. *Tynes*, 88 F.4th at 944;

*Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021). If the plaintiff does so, the burden shifts to the employer to articulate a legitimate reason for the adverse action. *Tynes*, 88 F.4th at 944; *Tolar*, 997 F.3d at 1289. If the employer meets that burden, then the burden returns to the plaintiff to show that the employer's articulated justification is pretextual and the true reason for the adverse action was unlawful discrimination or retaliation. *Tynes*, 88 F.4th at 944; *Tolar*, 997 F.3d at 1289.

Alternatively, a plaintiff may prove discrimination or retaliation by simply presenting a "convincing mosaic" of evidence sufficient to allow a reasonable factfinder to infer intentional discrimination or retaliation. *Tynes*, 88 F.4th at 946–47; *Berry*, 84 F.4th at 1310–11. A convincing mosaic "is a metaphor, not a legal test and not a framework." *Berry*, 84 F.4th at 1311. In essence, the convincing mosaic approach is simply a "rearticulation of the summary judgment standard[.]" *Tynes*, 88 F.4th at 946.

Ultimately, regardless of how the plaintiff presents her evidence, the inquiry for a court at summary judgment is whether enough evidence permits a reasonable factfinder to find that the employer discriminated against or retaliated against the plaintiff. *Tynes*, 88 F.4th at 946–47; *Berry*, 84 F.4th at 1310–11. In other words, "the *McDonnell Douglas* framework and the convincing mosaic approach are two paths to the same destination—the ordinary summary judgment standard." *McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024). The "final question" is simply

whether a reasonable jury could infer illegal discrimination or retaliation. *Id.*

With these general legal principles in mind, we turn to the Title VII claims at issue here.

## B. Banks's Claims

To establish a claim for retaliation under Title VII, a plaintiff "must prove that she engaged in statutorily protected activity, that she suffered an adverse action, and that the adverse action was causally related to the protected activity." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018).

We first acknowledge that the plaintiffs submitted evidence of troubling statements made by Johnson reflecting a generalized discriminatory animus against people born in Africa or of African origin. For example, Johnson allegedly made negative generalizations about African nurses, and stated that she wouldn't hire any more African nurses and would reject resumes with African-sounding names. She also created a pie chart representing the different national origins and ethnicities of the Unit, and allegedly said that there were too many African employees, and that it was time to "dilute some of the Nigerians out." To be clear, we have fully taken Johnson's statements and actions into account in our analysis. Undisputedly, both Banks and Sanusi complained about them and established that they engaged in statutorily protected activity.

Sanusi was terminated, an obvious adverse action, but Banks received only a written reprimand. There is some question about

whether Banks suffered an adverse employment action under Title VII, but we assume that she did for purposes of this appeal. Thus, we focus on whether the evidence was sufficient for a reasonable jury to infer that the adverse action—the reprimand—was motivated by retaliatory animus or was causally related to Banks's protected activity.

Grady reprimanded Banks for insubordination because she was purportedly told not to contact the nurse complainants but she did anyway. Banks does not dispute that she contacted Chinenye Ndukwe, one of the nurses who complained about her performance, and Anita Brownell, another nurse in the Unit. Nor does Banks assert that Johnson and Lescota did not discuss Ndukwe's complaint with her at the April 30, 2020 meeting. Instead, Banks points to deposition testimony establishing, in her view, that at the meeting, Johnson instructed her to refrain from contacting only one of the complainants, Daniella Lewis, and did not instruct her to forego contacting anyone else. This, Banks argues, creates a factual dispute about whether she was actually instructed not to contact the other nurses.

As an initial matter, Banks testified that she was told not to contact Daniella Lewis and she was not given any other specific names not to contact. Grady's attorney then asked, "So you remember being told not to talk to Daniella, but you don't remember being told not to talk to anyone about the allegations?" And Banks responded, "Correct." It is undisputed, however, that

23-13376                Opinion of the Court                9

Lescota discussed complaints from multiple individuals during the meeting.

"An assertion that a party does not recall an event does not itself create a question of material fact about whether the event did, in fact, occur[.]" *To v. U.S. Bancorp*, 651 F.3d 888, 892 n.2 (8th Cir. 2011). So even assuming that Banks is correct that she was not told the specific names of any complainants other than Daniella Lewis, Banks's testimony that she did not remember being told not to talk to anyone about the allegations is not inconsistent with Johnson's and Lescota's testimony that Lescota told Banks not to approach "any of the associates that came forward[.]"—a directive that would have applied whether or not she was told the names of all the complainants by Lescota. *See* Doc. 106-9 at 124; Doc. 106-5 at 221. Banks therefore has not created a genuine factual dispute as to what instructions she was given and whether she failed to comply with them. *See To*, 651 F.3d at 892 n.2; *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2002) (finding that a plaintiff's assertion that she did not remember receiving a brochure did not raise genuine factual issue as to whether it was distributed to her).

In any event, Banks's testimony does not create a genuine issue of material fact precluding summary judgment because Johnson and Lescota reasonably believed in good faith that Banks was insubordinate by contacting the other nurses. This Court has explained that "an employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Tanner v. Stryker*

*Corp. of Mich.*, 104 F.4th 1278, 1289–90 (11th Cir. 2024) (alteration omitted); *Tynes*, 88 F.4th at 944 ("[A]n employer can generally fire or discipline an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, so long as that action is not for a discriminatory reason.") (quotation marks omitted); *see also Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1020–21 (11th Cir. 2023) (affirming grant of summary judgment to the employer under the convincing mosaic theory).

Here, the evidence shows that Johnson and Lescota honestly believed that Banks violated instructions. As mentioned above, both Johnson and Lescota testified in their depositions that Lescota specifically told Banks not to contact any of the nurse complainants. Additionally, Lescota's contemporaneously recorded notes from the April 30, 2020 meeting indicated that Lescota asked Banks to promise not to "approach any of the associates that came forward and question them." Banks's testimony, taken as true, is thus consistent with Grady's "mistaken but honest impression that [Banks] violated a work rule." *Tanner*, 104 F.4th at 1289–90.

One final way Banks might have shown that either the April 30, 2020 meeting or the subsequent written reprimand were motivated by Johnson's retaliatory animus is by demonstrating "close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). But Banks is unable to do so. The statements and conduct arguably reflecting

national origin discrimination that Banks complained about occurred in 2019. Banks made her most recent complaint about Johnson's discriminatory behavior on December 3, 2019. Thus, about five months elapsed between Banks's complaint and the April 30, 2020 meeting. This Court has previously identified a "three to four month disparity between the statutorily protected expression and the adverse employment action" as being insufficient, standing alone, to establish that the adverse action was causally related to the protected activity. *Id.* at 1364 citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)).

For all of these reasons, Banks fails to show that a reasonable jury could find that Grady's adverse actions were based on illegal retaliation. We affirm the district court's grant of summary judgment to Grady on Banks's retaliatory harassment and retaliatory discipline claims.

We also affirm summary judgment for Grady on Banks's constructive discharge claim. A constructive discharge occurs "when an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job." *Bryant v. Jones,* 575 F.3d 1281, 1298 (11th Cir. 2009) (quotation marks omitted). To prevail on a constructive discharge claim, a plaintiff must show that "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Id.* (quotation marks omitted).

Banks has not shown that the written reprimand made her "working conditions intolerable" and "force[d]" her to resign. *Id.* As a result of the written reprimand, Banks could not have been promoted or transferred within Grady for one year. But Banks had the opportunity to continue working at Grady in her role in the Unit. The conditions imposed by the written reprimand were not "so unbearable" that Banks was "compelled" to resign. *Id.* Banks thus cannot prevail on her constructive discharge claim.

## C. Sanusi's Claims

The district court granted summary judgment to Grady on plaintiff Sanusi's national origin discrimination and retaliation claims, finding that the two reports of Sanusi's substandard patient care constituted legitimate nondiscriminatory reasons for firing Sanusi.

The evidence supporting Grady's reasons for Sanusi's termination is substantial and largely undisputed. First, on September 17, 2020, a doctor reported that two patients in the Unit did not have their blood pressures taken for 12 hours. Sanusi knew that the assigned nurse had been recently hired and was on orientation, and Sanusi was supervising the new nurse. An investigation into the incident revealed that Sanusi, as nurse supervisor, completed shift assessments showing each patient's physical condition even though computer records indicated that no blood pressure was ever taken. Sanusi does not dispute that the blood pressure was not taken for 12 hours.

Second, on October 2, 2020, a new patient in the Unit experienced a spike in blood pressure.  Sanusi re-took the patient's blood pressure and confirmed that it was abnormally high, but she did not immediately notify the presiding doctor.  Instead, Sanusi "joked and laughed" with the patient and then left the room to treat another patient.  When confronted by the doctor, Sanusi allegedly stated that some of the high blood pressure readings did not belong to the patient, but the patient ultimately confirmed to Johnson that the readings were hers.

Sanusi argues that the October 2, 2020 incident did not provide a legitimate basis for her termination because the presiding doctor's incident report incorrectly stated that Sanusi waited four hours to notify the doctor about the high blood pressure readings.  True, Johnson's investigation revealed that the clock on the blood pressure machine was wrong, meaning Sanusi did not wait four hours to report the patient's high blood pressure.  But Sanusi does not dispute (1) that the blood pressure reading was "high," (2) Johnson's testimony that the high blood pressure reading indicated that the patient "was in a very critical state," and (3) that Sanusi did not promptly report the high blood pressure reading to the doctor and instead went to treat another patient.

This evidence concerning Sanusi's performance on September 17 and October 2 plainly supports Grady's explanation that it terminated Sanusi because of her deficient patient care.

Moreover, Sanusi fails to establish temporal proximity to support an inference that her termination was caused by

discriminatory or retaliatory animus. *See Thomas*, 506 F.3d at 1364. As discussed above, Johnson's national origin discrimination statements took place in 2019—over a year before Sanusi's termination in October 2020. And Sanusi's most recent complaint about Johnson's behavior came in February 2020, at least seven months before her termination. Thus, Sanusi has not established that a reasonable factfinder could infer or find that Grady terminated her on the basis of national origin discrimination or retaliation. *See id.*

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to Grady on Banks's and Sanusi's Title VII claims.

**AFFIRMED.**